UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FLORIDA
Case No.:

JESUS LIZARAZO,

      Plaintiff,

vs.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES,

      Defendants.

_____/

## COMPLAINT

COMES NOW the, Plaintiff, JESUS LIZARAZO, and hereby sues the Defendant, CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINES, (hereinafter "CARNIVAL") and as grounds therefore states.

## JURISDICTION AND IDENTIFICATION OF PARTIES

1.  This matter arises out of an incident occurring on the Carnival Breeze which is a cruise ship owned by CARNIVAL. The passenger contract provides:

> It is agreed by and between the Guests and Carnival that all disputes and matters whatsoever arising under, in connection with an incident to this Contract or the Guest's cruise, ..., shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami...(Ex. 1. p.14).

2.  The passenger contract further provides :

> Carnival is used in this Contract it shall mean and include the Vessel, it's owners, operators, employees, agents, charters, and tenders...(Ex. 1 p.3).

3.  That the plaintiff has complied with all conditions precedent set forth in the contract, including the notice of claim requirement. (Ex. 2).

-1-

4.     This incident occurred on navigable waters as such jurisdiction exists under 28 U.S.C. 1333.

## **FACTS GIVING RISE TO CLAIM**

5.   That on or about January 19, 2015, the plaintiff, JESUS LIZARAZO, was a passenger on board the Carnival Breeze which was sailing on navigable waters.

6.     That on the aforementioned date employees of CARNIVAL, solicited plaintiff and his wife to have their photograph taken on the ship and negligently directed plaintiff to walk through a corridor and/or area on the ship which was dark, not properly illuminated and which was obstructed with hazardous objects which were negligently situated and/or committed to remain in the pedestrian walking area at or near the location where plaintiff was to be photographed with his family.  As a result plaintiff was caused to trip and fall.

## **CLAIMS AGAINST CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINES**

Plaintiff realleges and readopts paragraphs 1 through 6 and further alleges:

7.  At all times material, the defendant CARNIVAL,  by and through its employees, and/or agents, owed a duty to maintain it's vessel in a reasonably safe condition and to remove hazardous conditions which it knew or should have known of and to warn of dangerous conditions which it knew or should have known.

8.     That despite said duty the defendant, CARNIVAL, by and through its employees and/or agents was negligent in one, some or all of the following ways:

   a)     in failing to have adequate lighting in the area where plaintiff tripped and fell;

   b)     in allowing hazardous objects to remain in the walkway designed for pedestrians when they knew or should have known that these hazardous objects presented a trip hazard;

   c)     in allowing an area designed for pedestrian traffic to exist in such a way that it was difficult to see hazardous objects and therefore caused a tripping hazard to exist;

d)   in failing to warn the plaintiff when it knew or should have known that hazardous objects in the pedestrian walkway were difficult to see and presented a trip hazard;

e)   in failing to maintain the pedestrian walkway free of obstructions and tripping hazards.

9.   As a direct and proximate cause of the negligence of the defendant by and

through its employees and/or agents the plaintiff, JESUS LIZARAZO, was caused to trip and fall

and has in the past and will in the future suffer the following damages:

a)   pain and suffering;

b)   disability;

c)   mental anguish;

d)   medical and rehabilitation expenses;

e)   loss of capacity to enjoy life; and

f)   aggravation of a pre-existing condition; and

g)   loss of earnings or earning capacity.

WHEREFORE, plaintiff hereby demands judgment for damages including costs and

prejudgment interest and demands a trial by jury.

Dated this 14th day of DECEMBER, 2015.

**Respectfully submitted**,
STOKES & GONZALEZ, P.A.
Attorneys for Plaintiff
7300 North Kendall Drive, Suite 519
Miami, FL 33156
Phone:(305) 358-2434
Email designation:
Primary:      jacinto@stokesgonzalez.com
Secondary: jackie@stokesgonza.ez.com
BY: /S/ ***JACINTO J. GONZALEZ***
JACINTO J. GONZALEZ
F.B. #: 933708

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 14th day of DECEMBER, 2015. We also certify that a true and correct copy of the foregoing was served on all counsel or parties of records on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronic Notices of Filing.

## SERVICE LIST

JACINTO J. GONZALEZ, ESQUIRE
Jacinto@stokesgonzalez.com
STOKES & GONZALEZ, P.A.
Attorneys for Plaintiff
7300 North Kendall Drive, Ste. 516
Miami, FL 33156
Phone:(305) 358-2434
Fax:(305) 358-2435

# EXHIBIT 1

Passenger's Name: Jesus I Lizarazo

Booking # 4C4VTO

Date 01-17- to -01-25-2015

C(i8rt

Terms and Conditions............... JURISDICTION

This site is controlled and operated by CARNIVAL from its offices within the State of Florida, United States of America. CARNIVAL makes no representation that materials in the site are appropriate or available for use in other locations. These terms shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to any principles of conflicts of law. You agree that any action at law or in equity arising out of or relating to these terms shall be filed only in the state or federal courts located in Miami-Dade County and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action. - See more at: http://secure.carnival.com/about-carnival/legal-notice/termsandconditions.aspx#sthash.82NuPKBh.dpuf

Hi; Here is a copy of my Ticket contract you can find more info here:

See more at: http://secure.carnival.com/about-carnival/legal-notice/ticket-contract.aspx?icid=CC_Footer_84#sthash.WzQycVKj.dpuf

# TICKET CONTRACT

**IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.**

**NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1, 4, AND 11 THROUGH 14, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING**

FORUM SELECTION, CHOICE OF LAW, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.

## IMPORTANT TERMS AND CONDITIONS OF CONTRACT – READ CAREFULLY

In consideration of the receipt of the full cruise fare, Carnival Cruise Lines ("Carnival") agrees to transport Guest on the above - specified voyage on the following terms and conditions:

## 1. DEFINITIONS AND SCOPE OF CONTRACT

(a) Whenever the word "Carnival" is used in this Contract it shall mean and include the Vessel, its owners, operators, employees, agents, charterers and tenders. The term "Guest" shall include the plural where appropriate, and all persons or entities booking or purchasing passage and/or traveling under this Contract, including heirs, representatives and any accompanying minors. The masculine includes the feminine. "Guest" shall have the same meaning as "Passenger" in this Contract.

(b) "Cruise Fare" or "Fare" means the amount paid for the cruise which includes full board, ordinary ship's food during the voyage, but not gratuities, spirits, wine, beer, soft drinks or mineral waters, shore excursions, salon and spa services, Carnival LIVE concerts, or any other incidental charge or expense. The cruise fare shall be deemed to be earned when paid and not refundable except as stated in Carnival's brochure applicable to the voyage and as provided in Clauses 7 and 8, herein.

(c) Cruise Fare does not include Cruise Taxes, Fees, and Port Expenses. "Cruise Taxes, Fees, and Port Expenses" may include any and all fees, charges, tolls and taxes imposed on Carnival, by governmental or quasi-governmental authorities, as well as third party fees and charges arising from a vessel's presence in a harbor or port. Cruise Taxes, Fees and Port Expenses may include U.S. Customs fees, head taxes, Panama Canal tolls, dockage fees, wharfage fees, inspection fees, pilotage, air taxes, hotel or VAT taxes incurred as part of a land tour, immigration and naturalization fees, and Internal Revenue Service fees, as well as fees associated with navigation, berthing, stevedoring, baggage handling/storage, and security services. Cruise Taxes, Fees, and Port Expenses may be assessed per passenger, per berth, per ton or per vessel. Assessments calculated on a per ton or per vessel basis will be spread over the number of passengers on the Vessel. Cruise Taxes, Fees and Port Expenses are subject to change and Carnival reserves the right to collect any increases in effect at the time of sailing even if the fare has already been paid in full.

(d) Cruise Fare does not include fuel supplement charges, security surcharges, or similar incidental surcharges ("surcharges"); Carnival reserves the right to impose or pass any of these surcharges and no right of cancellation shall be implied. "Fuel supplement" shall mean any additional charge to defray a portion of Carnival's fuel costs. The amount of fuel supplements and government fees and taxes collected are subject to change. Carnival reserves the right to charge a fuel supplement of up to $9.00 USD, or its equivalent in foreign currency, per person per day, without prior notice, in the event that the price of light sweet crude oil according to the NYMEX (New York Mercantile Exchange Index) is greater than $70.00 USD per barrel of oil. Carnival may collect any fuel supplement in effect at the time of sailing, even if the cruise fare has been paid in full.

(e) This ticket is valid only for the person(s) named hereon as Guests and cannot be transferred or modified without Carnival's written consent. The acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this cruise Contract.

(f) All rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's facilities, whether at sea or ashore, servants, agents, managers, affiliated or related companies, suppliers, shipbuilders and manufacturers of component parts and independent contractors, including, but not limited to, shore excursion or tour operators, ship's physician, ship's nurse, retail shop personnel, health and beauty staff, fitness staff, video diary staff, and other concessionaires, who shall have no liability to the Guest, either in contract or in tort, which is greater than or different from that of Carnival.

(g) Except as otherwise expressly provided herein, this contract constitutes the entire agreement between Carnival and Guest and supersedes all other agreements, oral or written. Any alteration to any term of this contract must be in writing and authorized by Carnival. In the event of a direct conflict between a provision of this contract and a provision of the *Cruise Industry Passenger Bill of Rights* (PBOR) in effect at the time of booking PBOR controls. Guests purchasing Carnival LIVE concert tickets, spa services or shore excursions through Carnival are subject to the additional terms and conditions at http://www.carnival.com/legal/shore-excursions-terms.aspx which are incorporated by reference. Except as provided in Clause 13 below, should any provision of this contract be contrary to or invalid by virtue of the law of the jurisdiction in which this contract is sought to be enforced or be so held by a court of competent jurisdiction, such provision(s) shall be deemed to be severed from the Contract and of no effect and all remaining provisions herein shall be in full force and effect and constitute the Contract of Carriage.

## 2. NATURE OF CRUISE AND GUEST'S OBLIGATIONS

(a) The Guest admits a full understanding of the character of the Vessel and assumes all risks incident to travel and transportation and handling of Guests and cargo. While at sea or in port the availability of medical care may be limited or delayed. Guest acknowledges that all or part of their voyage may be in areas where medical care and evacuation may not be available. Guest agrees to indemnify and reimburse Carnival in the event Carnival elects to advance the cost of emergency medical care, including medical care provided ashore as well as transportation and/or lodging in connection therewith.

(b) Carnival's vessels visit numerous ports in a number of countries. Guests assume responsibility for their own safety and Carnival cannot guarantee Guest's safety at any time. The United States Department of State, Centers for Disease Control and Prevention and other governmental and tourist organizations regularly issue advisories and warnings to travelers and Carnival strongly recommends Guests obtain and consider such information when making travel decisions. Carnival assumes no responsibility for gathering said information. The Guest acknowledges that the cruise may be booked in a location that is susceptible to severe weather systems, including but not limited to, hurricanes, tropical storms and depressions, and that Carnival reserves the right to alter the ship's course, ports of call, itinerary, activity and shore excursions to avoid such weather systems and insure the comfort and safety of the Guest and crew.

(c) Proper travel documentation and eligibility to travel is required at the embarkation and throughout the cruise. In addition to immigration and customs requirements, the U.S. government and others place restrictions on the carriage of guests whose names appear on government watch lists or who are deemed legally ineligible to travel. It is the guest's sole responsibility to ensure his/her legal eligibility to travel and to bring and have available at all times all required travel documents. Guests are advised to check with their travel agent or the appropriate government authority to determine the necessary documents and travel eligibility requirements. Carnival may cancel the booking of any guest who is or becomes ineligible to travel for any reason, or who is traveling without proper documentation. Any such Guest, or any

Guest who fails to board the ship at embarkation, shall be ineligible to board the ship thereafter without Carnival's consent, and shall not attempt to do so at the same or another port. Under these circumstances the Guest shall not be entitled to a refund or compensation of any kind. Guest is responsible for all related costs and fines, including without limitation travel expenses and for proper travel documentation for any port, or for departure from or arrival to the US. Under no circumstances shall Carnival be liable for any costs, damages or expenses whatsoever incurred by any Guest as a result of such failure, cancellation or denial of boarding.

(d) Guest acknowledges receipt of Carnival's applicable brochures and agrees to abide by the terms and conditions of Carnival's brochures and web site, including but not limited to the information contained in the "Frequently Asked Questions" and "Embarkation Information" sections.

(e) Guest acknowledges that, for a voyage commencing in a United States port for a round-trip voyage via one or more United States ports, Guest must complete the voyage and disembark at the embarkation port. Failure to do so may result in a fine or penalty being imposed by the United States Customs Service or other governmental agency. In consideration for the fare paid, Guest agrees to pay any such fine or penalty imposed because of Guest's failure to complete the voyage.

(f) Carnival shall refuse boarding to any Guest under the age of twenty-one unless: (1) the Guest is traveling in the same stateroom with an individual twenty-five years or older; (2) traveling in the same stateroom with their spouse; or (3) traveling with a parent or guardian in an accompanying stateroom. Adult guests agree to be responsible at all times for the safety and behavior of their minor guests. Proof of age and/or proof of marriage are required. Carnival shall not be liable to make any refunds or for any damages with respect to any Guest's failure to provide proper proof of age or marriage or otherwise comply with this provision.

(g) Guests must attend the mandatory safety briefing at the commencement of the cruise and any subsequent briefing ordered by the ship's officer during the cruise. Guests shall comply with all onboard health and safety policies and procedures, and shall familiarize themselves with the nature and character of the ship, as well as, all emergency exits, to assist with safe evacuation in the event of an emergency.

### 3. YOUR TRAVEL AGENT

Any travel agent or sales agent utilized by the Guest in connection with the booking of the cruise, or this contract is solely the agent of the Guest and not Carnival. Carnival is not responsible for the financial condition or integrity of any travel agent utilized by Guest. In the event that an agent shall fail to remit to Carnival any monies paid to the agent by Guest, Guest shall be and remain liable for the fare due to Carnival, regardless of whether liability is asserted before or after embarkation. Issuance and validity of ticket contract is conditional upon final payment being received by Carnival prior to sailing. Any refund made by Carnival to an agent on behalf of Guest shall be deemed payment to Guest, regardless whether the monies are delivered by the agent to Guest. Receipt of this ticket contract, any other documentation or notification pertaining to the cruise by Guest's travel agent shall constitute receipt by Guest.

### 4. BAGGAGE, PERSONAL PROPERTY, PROHIBITED ITEMS, LIMITATION OF LIABILITY

(a) Each fully paid adult Guest will be allowed a reasonable amount of luggage on board containing their personal belongings. Luggage means only trunks, valises, satchels, bags, hangers and bundles with their contents consisting of only such wearing apparel, toilet articles and similar personal effects as are necessary and appropriate for the purpose of the journey.

(b) No tools of trade, household goods, presents and/or property of others, jewelry, money, cameras, documents, valuables of any description including but not limited to such articles as are described in Title 46 of the United States Code section 30503 shall be carried except under and subject to the terms of a special written contract or Bill of Lading entered into with Carnival prior to embarkation upon application of the Guest. The Guest warrants that no such articles are contained in any receptacle or container presented by him as baggage hereunder, and if any such articles are shipped in the Guest's baggage in breach of this warranty, no liability for negligence, gross or ordinary, shall attach to Carnival for any loss or damage thereto.

(c) Carnival shall not be liable for: (1) Guest's failure to comply with the requirements set forth in Clauses 4(a) and 4(b); (2) any loss or damage before baggage comes into Carnival's actual custody on board or after baggage leaves Carnival's actual custody on board, including, but not limited to, loss or damage by airlines or other transportation services; (3) any loss or damage of baggage while not in the actual possession, custody and control of Carnival; (4) damage due to wear, tear or normal usage; (5) any loss or damage of perishable items, medicine, liquor, cash, securities or other financial instruments, or (6) any loss or damage while in the custody and control of stevedores.

(d) It is stipulated and agreed that the aggregate value of Guest's property, does not exceed $50 USD per guest or bag with a maximum value of $100 USD per stateroom regardless of the number of occupants or bags and any liability of Carnival for any cause whatsoever with respect to said property shall not exceed such sum, unless the Guest shall in writing, delivered to Carnival, prior to embarkation, declare the true value thereof and pay to Carnival prior to embarkation a sum equal to 5% of the excess of such value. If Carnival shall be held liable for the loss of or damage to Guest's baggage or property it is agreed that such liability shall not exceed the lesser of: (1) the actual cash value, or (2) value declared in the manner above provided (up to U.S. $100 USD if no such declaration has been made). Declared value amounts to be proportionately reduced in any case where less than all of Guest's baggage or property is lost, delayed or rendered unusable due to damage. In no event shall Carnival be liable to pay any compensation if the nature or value of the property has been misrepresented.

(e) No Guest is permitted, to bring on board the vessel live animals (other than qualified service animals, with not less than 14 days advance notice given to Carnival). Guest will be solely responsible for any and all damage and/or loss caused by service animals.

(f) Weapons, firearms, contraband, ammunition, explosives, incendiary devices, or other dangerous items are strictly prohibited aboard the vessel. Carnival reserves the right to confiscate, destroy and/or turn over to authorities these or any other items it deems in its sole discretion to be detrimental to the safety or comfort of any person or which are otherwise improperly in the possession of any Guest. Each Guest warrants that no such articles are contained in any receptacle or container carried or presented as baggage. Alcoholic beverages are prohibited except as provided for in clause 8(f). All Guests agree Carnival has, at all times with or without notice, the right to search Guest's baggage and/or personal effects for any of the prohibited items, at any location, to ensure compliance with these restrictions. Any Guest who refuses any such search or screening, or any Guest traveling with such items, may be denied boarding or disembarked and no refund of the cruise fare will be issued. The Guest will be solely responsible for any and all damage and/or loss caused by his violation of this policy.

## 5. FITNESS TO TRAVEL, SPECIAL NEEDS, PREGNANCY, INFANTS, DRINKING, DISEMBARKATION

(a) The Guest warrants that he and those traveling with him are physically and emotionally fit to travel at the time of embarkation, and further certifies that such Guests have no medical or emotional condition that would endanger any Guest or others. Any Guest with special medical,

physical or other needs requiring medical attention or special accommodation during the voyage is requested to notify Carnival in writing at the time of booking of such special need. Upon booking the cruise, guests who have special needs are requested to contact Carnival's Special Needs Desk (305-599-2600 ext. 70025) to discuss the details of their special needs. Carnival recommends that any Guest who is not self-sufficient travel with a companion who shall take responsibility for any assistance needed during the voyage and in case of emergency

(b) Carnival and the Master each reserves the right to refuse passage, disembark or confine to a stateroom any Guest whose physical or mental condition, or behavior would be considered in the sole opinion of the Captain and/or the ship's physician to constitute a risk to the Guest's own well-being or that of any other Guest or crew member. Guest understands and acknowledges that in addition to the limitations on medical care described in Clause 2 (a), prenatal and early infant care, in particular, may require specialized diagnostic facilities and/or treatment that are not obtainable during the cruise on board the ship and/or ashore in ports of call. Therefore, the Guest agrees not to book a cruise or board the ship if at any time during the cruise she will enter the 24th week of estimated gestational age, nor for or with infants less than six months old--for trans-ocean crossings, South America and Hawaii the infant must be at least twelve months of age at the time of embarkation to sail. Carnival and the Master reserve the right to disembark any guest whose behavior affects the comfort, enjoyment, safety or well being of other guests or of any crew. All expectant Guests further agree to provide Carnival, prior to embarkation, with a physician's statement verifying that her gestational status is in accordance with this policy, and certifying her fitness to travel even if she will be less than twenty-four weeks pregnant. Failure to do so shall result in the cancellation of the Guest's reservation without refund, compensation or payment except as set forth in Carnival's cancellation policy described in Clause 6, based on the timing of such cancellation.

## 6. CANCELLATION BY GUEST, REFUNDS

Reservations will be held until 30 minutes prior to departure. No refunds will be made in the event of "no shows", unused tickets, lost tickets, interruptions, partially used tickets, cancellations received late or after the start of the cruise, or for Pack & Go program purchases. Carnival strongly recommends the purchase of trip cancellation insurance from your travel agent. Cancellation charges for individual bookings will be assessed as listed below. For cancellation charges related to group bookings, partial ship charters or full ship charters refer to your charter contract or group booking agreement for terms and conditions.

|  | DAYS PRIOR TO DEPARTURE DATE | CANCELLATION CHARGE(per guest) |
|---|---|---|
| 2,3,4 & 5 day cruises | Up to 61 days | None (except Cruises to Nowhere*** and Early Saver*, Easy Saver*, and Super Saver fares**) |
|  | 60 to 46 days | Deposit*** |
|  | 45 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
|  | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
|  | 14 days or less | 100% of Total Fare |
| 6 day or longer cruises (excluding Europe, Transatlantic, Panama | Up to 76 days | None (except Early Saver*, Easy Saver*, and Super Saver fares**) |

| | | |
|---|---|---|
| Canal and Transpacific cruises) | 75 to 56 days | Deposit |
| | 55 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
| | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
| | 14 days or less | 100% of Total Fare |
| Europe Cruises, Transatlantic Cruises, Panama Canal Cruises & Transpacific Cruises | Up to 91 days | None (except Early Saver*, Easy Saver*, and Super Saver fares**) |
| | 90 to 56 days | Deposit |
| | 55 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
| | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
| | 14 days or less | 100% of Total Fare |
| All cruises purchased under the Instant Saver fare | Any time after booking | 100% of Total Fare |

Total Fare is defined as Cruise Fare, Air Supplement, Transfer Services and Pre/Post Cruise Vacation Packages.

*Early Saver & Easy Saver: The deposit is non-refundable. All cancellations that occur prior to final payment due date will receive a non-refundable and non-transferable future cruise credit, redeemable for US dollars bookings, in the amount of the deposit less a $50 pp service fee. The future cruise credit must be used on a sailing within 24 months from the date of cancellation and can only be applied to your cruise fare. Any unused portion will be forfeited.

**Super Saver: The deposit is non-refundable.

***For Cruises to Nowhere, the cancellation charge is 25% of Total Fare.

## 7. CARNIVAL'S RIGHT TO INCREASE FARES, CANCEL OR CHANGE VOYAGE, CHANGE STATEROOM ASSIGNMENTS:

(a) Carnival reserves the right to increase published fares and air fare supplements without prior notice. However, fully paid or deposited guests will be protected, except for fares listed, quoted, advertised or booked in error, fuel supplements, government taxes, other surcharges and changes to deposit, payment and cancellation terms/conditions, which are subject to change without notice. In the event that a cruise fare listed, quoted or advertised through any website, Carnival sales person, travel agent or any other source is booked but is incorrect due to an electronic error, typographical error, human error or any other error causing the fare to be listed, quoted or advertised for an amount not intended by Carnival, Carnival reserves the right to correct the erroneous fare by requesting the Guest to pay the correct fare intended, or by canceling the cruise in exchange for a full refund, but in no event shall Carnival be obligated to honor any such booking resulting from the error or otherwise be liable in such circumstances.

(b) Carnival reserves the right to offer promotional cruise fares that require a minimum occupancy requirement per cabin. When the booked cruise fare is contingent on a minimum occupancy requirement per cabin, cancellation by one or more guests in a cabin may cause an adjustment to the remaining guests booked cruise fare based on the prevailing and available rate at the time of the cancellation ("recalculated fare"). Final payment in full of the recalculated fares for all remaining guests in a cabin is due by 11:59:59 p.m. EST on the eve before the start of the cancellation penalty period. Failure to make timely final payment in full of the recalculated fares by all remaining guests in a cabin will result in automatic cancellation of the reservation for the entire cabin.

(c) Carnival has the right without previous notice to cancel this contract at the port of embarkation or any time during the voyage and shall thereupon return to the Guest, if the Contract is completely canceled, his Cruise Fare, or, if the Contract is partially canceled, a proportionate part thereof. Under such circumstances, Carnival shall have no further liability for damages or compensation of any kind. In the event a voyage is terminated early due to mechanical failure of the Vessel, Guest is also entitled to transportation to the Vessel's scheduled port of disembarkation or Guest's home city, at Carnival's discretion and expense, as well as necessary lodging at the unscheduled port of disembarkation, if required, at Carnival's expense.

(d) The Vessel shall be entitled to leave and enter ports with or without pilots or tugs, to tow and assist other vessels in any circumstances, to return to or enter any port at the Master's discretion and for any purpose, and to deviate in any direction or for any purpose from the direct or usual course, and to omit or change any or all port calls, arrival or departure times, with or without notice, for any reason whatsoever, including but not limited to safety, security, adverse weather, strikes, tides, hostilities, civil unrest, port closings, emergency debarkations of Guests or crew, late air, sea, car or motor coach departures or arrivals, mechanical breakdowns, US or foreign governmental advisories or travel warnings, all such deviations being considered as forming part of and included in the proposed voyage. Except as provided in Clause 7(c) with regard to early termination of a voyage, Carnival shall have no liability for any compensation or other damages in such circumstances other than as provided by Carnival's change of itinerary policy at the time Guest or his agent acknowledges receipt and acceptance of the terms and conditions of the cruise ticket contract. Carnival's change of itinerary policy can be found at www.carnival.com or at www.carnival.com/faq.

(e) Except as provided in Clause 7(c), if the performance of the proposed voyage is hindered or prevented (or in the opinion of Carnival or the Master is likely to be hindered or prevented) by war, hostilities, blockage, ice, labor conflicts, strikes on board or ashore, restraint of Princes, Rulers or People, seizure under legal process, breakdown of the Vessel, congestion, docking difficulties or any other cause whatsoever or if Carnival or the Master considers that for any reason whatsoever, proceeding to, attempting to enter, or entering or remaining at the port of Guest's destination may expose the Vessel to risk or loss or damage or be likely to delay her, the Guest and his baggage may be landed at the port of embarkation or at any port or place at which the Vessel may call, at which time the responsibility of Carnival shall cease and this contract shall be deemed to have been fully performed, or if the Guest has not embarked, Carnival may cancel the proposed voyage without liability to refund passage money or fares paid in advance.

(f) Carnival and the Master shall have liberty to comply with any orders, recommendations or directions whatsoever given by the Government or Department of any nation or by any person acting or purporting to act with the authority of such Government or Department or by any Committee or person having under the terms of the War Risks Insurance on the Vessel the right to give such orders, recommendations or directions, and if by reason of, and in compliance with any such orders, recommendations or directions anything is done or is not done the same shall not be deemed a deviation or a breach of this contract. Disembarkation of any Guest or discharge

of baggage in accordance with such orders, recommendations or directions shall constitute due and proper fulfillment of the obligation of Carnival under this Contract.

(g) Specific stateroom assignments are not guaranteed. Carnival reserves the right to move Guests to a comparable stateroom for any reason, including but not limited to, instances in which a stateroom is booked with fewer than the maximum number of Guests the stateroom can accommodate; or when a partial Guest cancellation occurs and the remaining number of Guests do not match the maximum number of Guests the stateroom can accommodate.

## 8. COMPLIANCE WITH RULES, SOLICITATION, SMOKING, DRINKING, ILLEGAL ACTIVITY, SEARCHES

(a) Guest agrees during the course of the voyage to follow the directions of the ship's Master, or his authorized officer. Guest further agrees not to solicit anyone on the vessel for any commercial or professional purposes. Guest agrees that any violation of this Clause may subject guest to disembarkation.

(b) Guest acknowledges that Carnival's vessels contain non-smoking sections. Guest agrees to refrain from smoking in those sections and agrees that Carnival has the right to disembark the Guest for failure to observe Carnival's non-smoking policy.

(c) Any and all forms of smoking, including but not limited to, cigarettes, cigars, electronic cigarettes, and personal vaporizers, are strictly prohibited onboard except in designated exterior open deck areas, certain night clubs, and designated areas in the casino. All staterooms and suite accommodations are entirely smoke free, including the outside balcony (Effective October 9, 2014). Guest agrees to strictly comply with Carnival's non-smoking policy. Guest further acknowledges and agrees that any violation of this policy shall, in the sole discretion of Carnival, constitute a material breach of this cruise contract. In the event of such breach, Guest forfeits all rights hereunder, including the right to remain on board. Carnival reserves the right to disembark the Guest(s), at any port, as determined by Carnival. Carnival shall not be liable for any refund or other compensation or damages whatsoever to any Guest disembarked pursuant to this provision, or who disembarks because another Guest is so disembarked, and all such Guests forfeit all rights under Carnival's "Vacation Guarantee." Guest and Carnival further agree that any violation of the non-smoking policy would also cause Carnival to incur damages, including but not limited to, loss of guest goodwill, revenue, cleaning, maintenance and/or other costs. Guest and Carnival expressly acknowledge the difficulty of ascertaining the amount of such damages, and therefore agree that a reasonable estimate of the damages for any violation of the non-smoking policy is $250 USD. Guest authorizes a charge in this amount as liquidated damages, as well as repatriation expenses (including airfare) against Guest's on board charge account, without further notice, for any violation of the non-smoking policy.

(d) Guest agrees, in all ports of call, to return to the Vessel not less than 30 minutes before the scheduled departure time. Guest further acknowledges that shipboard and shore side clocks may have different times, but it is Guest's responsibility to return to the vessel so as not to miss vessel's departure. Any costs associated with transporting Guest to rejoin the vessel including, but not limited to, governmental fees, visa fees, subsistence, lodging, air fare, launch fare, car hire or agency fees shall be for the account of Guest.

(e) Carnival has a "zero tolerance" policy toward any illegal activity or behavior by Guests or crew aboard. Guest agrees to comply with this policy and further acknowledges that it is Carnival's policy to report incidents of illegal activity or behavior to the appropriate law enforcement authorities.

(f) Except as noted below, Guests are prohibited from bringing alcohol on Carnival's vessels for on board consumption. However, at the beginning of the cruise during embarkation day only, guests 21 years and older may bring one bottle of wine or champagne per person on board only in their carry-on luggage. A $15 USD corkage fee per 750ml bottle will be charged should guests wish to consume this wine/champagne in the dining room or in the Steakhouse. All alcohol, additional quantities of wine/champagne and excessive non-alcoholic beverages will be confiscated and discarded without compensation. Alcoholic beverages purchased in the vessel's gift shops or at a port of call will be retained by Carnival until the end of the voyage. Carnival reserves the right to refuse to serve alcohol to any passenger. Guest acknowledges that the minimum age permitted for the purchase, possession or consumption of alcoholic beverages aboard Carnival's vessels is twenty-one (21). Guest agrees to supervise all persons under age twenty-one (21) under Guest's charge to insure that they do not violate this, or any other, shipboard regulation. Guests who attempt to purchase alcohol by using false identification or the Sail & Sign card of a Guest who is twenty-one or older will be deemed in violation of this policy. Any Guest twenty-one or older who attempts to or purchases alcohol for any guest under twenty-one will also be deemed in violation of this policy. Guest agrees that Carnival has the right to disembark any guest who violates this policy and as well as any adults traveling with minors who violate this policy or any other shipboard regulation.

## 9. PERSONAL DATA; VIDEO SURVEILLANCE; RIGHT TO SEARCH OR INSPECT; PRIVACY NOTICE AND PUBLIC WIRELESS SERVICES

(a) Carnival may utilize closed circuit television or other surveillance means onboard the vessel.

(b) All Guests agree Carnival has, at all times with or without notice, the right to enter and search Guest's stateroom, personal safe or storage spaces, or to search or screen any Guest, and/or personal effects, at any location, to ensure compliance with any of the restrictions set forth in this agreement. Any Guest who refuses any such search or screening may be denied boarding or disembarked and no refund of the cruise fare will be issued.

(c) Guests may provide personal data to Carnival that may include names, postal or email addresses, date of birth, passport information, financial account, telephone numbers, likenesses, photographs or other information which would identify Guests personally. Guests may also provide Carnival or others certain sensitive data such as health, medical, dietary, religious, gender or sexual orientation information. All Guests agree that Carnival may (1) keep their personal and sensitive data, (2) use it in its business worldwide in accordance with its published privacy policies, (3) share it with its affiliated or related companies and (4) subject it to processing worldwide provided Carnival's safeguards are used. All Guests agree that any personal or sensitive data provided to Carnival in the European Economic Area may be used, processed and transferred worldwide including to the U.S.

(d) All Guests agree that Carnival may disclose personal or sensitive data to unaffiliated third parties (1) with the Guest's consent or authorization, (2) to help complete a transaction for the Guest, (3) to comply with law, applicable regulations, governmental and quasi-governmental requests, orders or legal process, (4) to enforce this or other agreements or protect the rights, safety or property of Carnival or others, (5) as part of a purchase, sale, or transfer of assets or our business, (6) to Carnival's agents or service providers to perform functions on its behalf, or (7) as otherwise described in Carnival's published privacy policies, as amended from time to time.

(e) Carnival may, but will not be required to, make wireless access to the Internet or access to wireless telephone services ("Wireless Services") available to Guests on board either directly or through a third party service provider. All Guests agree that use of Wireless Services is at their own risk and that Carnival shall not be liable to Guests in any manner for claims, losses or damages resulting therefrom. Guests' use of Wireless Services onboard is public; privacy of any

information sent or received is not guaranteed. Personal data may be available to third-party service providers and Carnival is not liable under any circumstances for any lack of privacy while using Wireless Services. All Guests agree that Carnival has the right, but not the obligation to monitor, record, intercept and disclose any transmissions over or using Wireless Services aboard the vessel, and to provide billing, account, or use records, and related information relating to all Wireless Services as it deems appropriate in its sole discretion (for example, in response to lawful process, orders, subpoenas, or warrants, or to protect Carnival's rights, passengers or property). All Guests agree that their use of Wireless Services is governed by Carnival's Terms and Conditions of Wireless Services [contained in your Folio or available on connection to the internet in addition to] any terms and conditions imposed by a third-party Wireless Services provider.

## 10. GUEST'S REIMBURSEMENT FOR FINES, EXPENSES, DEBTS AND DAMAGES

(a) The Guest shall be liable to and shall reimburse Carnival or the Master for any fines or penalties imposed on Carnival by any government, governmental agency or official, port or port official, for Guest's failure to observe or comply with local requirements in respect of immigration, border patrol, customs and excise, agriculture, health or any other government regulation whatsoever.

(b) The Guest or Guest's estate shall be liable to and shall reimburse Carnival for all deviation expenses (including loss of revenue), damages to the Vessel, its furnishings, operations or equipment, or any property of Carnival caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or any minors traveling with Guest. The Guest or Guest's estate shall defend and indemnify Carnival and the Vessel, their servants and agents against liability which Carnival or the Vessel or such servants or agents may incur towards any person, company or Government for any damage to property, personal injury or death caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or minors traveling with Guest.

(c) Carnival and the Vessel shall have a lien upon all baggage, money and other property whatsoever accompanying the Guest and the right to sell the same by public auction or otherwise for all sums whatsoever due from the Guest under this Contract and for the costs and expenses of enforcing such lien and such sale.

## 11. INDEPENDENT CONTRACTORS, SHORE EXCURSIONS AND OTHER SERVICES

(a) Guest acknowledges that all Shore excursions/tours (whether conducted in the water, on land or by air), airline flights and ground transportation, as well as the ship's physician, and on board concessions (including but not limited to, the gift shops, spa, beauty salon, fitness center, golf and art programs, video/snorkel concession) are either operated by or are independent contractors. Even though Carnival shall be entitled to collect a fee and earn a profit from the ticketing or sale of such services by such persons or entities, Carnival neither supervises nor controls their actions, nor makes any representation either express or implied as to their suitability. Carnival, in arranging for the services called for by the physician or nurse, all on board concessions, all shore excursion/tour tickets, all pre and post cruise airline flights or other transportation off of the ship and its tenders, does so only as a convenience for the Guest and Guests are free to use or not use these services. Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be liable for any negligent or intentional acts or omissions, loss, damage, injury or delay to Guest and/or Guest's baggage, property or effects in connection with said services. Guests use the services of all independent contractors at the Guest's sole risk. Independent contractors are entitled to make a proper charge for any service performed with respect to a Guest.

(b) Guest acknowledges that the ship's masseuse, barber, hair dresser, manicurist, fitness or golf instructor, videographer, art auctioneer, gift shop personnel, wedding planners or other providers of personal services are employees of independent contractors and Carnival is not responsible for their actions. Guest further acknowledges that although independent contractors or their employees may use signage or clothing which contains the name "Carnival" or other related trade names or logos, the independent contractor status remains unchanged. Independent contractors, their employees and assistants are not agents, servants or employees of Carnival and have no authority to act on behalf of Carnival.

## 12. LIMITATIONS OF CARNIVAL'S LIABILITY

(a) In consideration for the fare paid, it is agreed that Carnival shall not be held vicariously liable for the intentional or negligent acts of any persons not employed by Carnival nor for any intentional or negligent acts of Carnival's employees committed while off duty or outside the course and scope of their employment.

(b) In consideration for the fare paid, it is agreed that Carnival shall have no liability as a consequence of guest's use of ship's athletic or recreational equipment or as a consequence of guest's decision to participate in any athletic or recreational activity or event.

(c) On international cruises which neither embark, disembark nor call at any U.S. port and where the Guest commences the cruise by embarkation or disembarks at the end of the Cruise in a port of a European Member State, Carnival shall be entitled to any and all liability limitations and immunities for loss of or damage to luggage, death and/or personal injury as provided under EU Regulation 392/2009 on the liability of carriers to passengers in the event of accidents. Unless the loss or damage was caused by a shipping incident, which is defined as a shipwreck, capsizing, collision or stranding of the ship, explosion or fire in the ship, or defect in the ship (as defined by the Regulation), Carnival's liability is limited to no more than 400,000 Special Drawing Rights ("SDR") (approximately U.S. $608,000, which fluctuates depending on the daily exchange rate as published in the *Wall Street Journal*) if the passenger proves that the incident was a result of Carnival's fault or neglect. If the loss or damage was caused by a shipping incident, Carnival's liability is limited to no more than 250,000 SDRs (approximately U.S. $380,000, which fluctuates depending on the daily exchange rate as published in the *Wall Street Journal*). Compensation for loss caused by a shipping incident can increase to a maximum of 400,000 SDRs unless Carnival proves that the shipping incident occurred without Carnival's fault or neglect. Shipping incidents do not include acts of war, hostilities, civil war, insurrection, natural disasters, or intentional acts or omissions of third parties. In cases where the loss or damage was caused in connection with war or terrorism, Carnival's liability for any personal injury or death (whether occurring during a shipping incident or a non-shipping incident) is limited to the lower of 250,000 SDRs per passenger or 340 million SDRs per ship per incident. Punitive damages are not recoverable for cruises covered by EU Regulation 392/2009. For a copy of EU Regulation 392/2009, visit http://eur-lex.europa.eu/LexUriServ/LexUriServ.do? uri=OJ:L:2009:131:0024:0046:EN:PDF. In addition, Guests embarking a cruise in a European Member State port are afforded rights under EU Regulation 1177/2010. For additional information on EU Regulation 392/2009 and EU Regulation 1177/2010, visit Carnival's website at: http://www.carnival.com/~/media/CCLUS/Images/pdf/eu-reg-no11772010-pdf.ashx

http://www.carnival.com/~/media/CCLUS/Images/pdf/eu-reg-no3922009-pdf.ashx

(d) Carnival shall not be liable to the passenger for damages for emotional distress, mental suffering/anguish or psychological injury of any kind under any circumstances, except when such damages were caused by the negligence of Carnival and resulted from the same passenger sustaining actual physical injury, or having been at risk of actual physical injury, or when such damages are held to be intentionally inflicted by Carnival.

(e) In addition to all the restrictions and exemptions from liability provided in this Contract, including under clause 12(c) for cruises that embark or disembark in a port of a European Member State, on all cruises Carnival shall also have the benefit of all statutes of the United States of America providing for limitation and exoneration from liability and the procedures provide thereby, including but not limited Title 46 of the United States Code sections 30501 through 30509, and 30511. Nothing in this Contract is intended to nor shall it operate to limit or deprive Carnival or any such statutory limitation of or exoneration from liability under any applicable laws.

## 13. JURISDICTION, VENUE, ARBITRATION, TIME LIMITS FOR CLAIMS AND GOVERNING LAW

(a) Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

(b) Carnival shall not be liable for any claims whatsoever, other than for personal injury, illness or death of the Guest, unless full particulars in writing are given to Carnival within 30 days after the Guest is landed from the Vessel or in the case the Voyage is abandoned, within 30 days thereafter. Legal proceedings to recover on any claim whatsoever other than for personal injury, illness or death shall not be maintainable unless commenced within six months after the date Guest is landed from the Vessel or in the case the Voyage is abandoned, within six months thereafter, and unless served upon Carnival within 120 days after commencement. Guest expressly waives all other potentially applicable state or federal limitation periods for claims which include, but are not limited to, allegations concerning any and all civil rights, the ADA, trade practices and/or advertising

(c) Except as provided in Clause 13 (d) below, it is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

(d) Any and all disputes, claims, or controversies whatsoever, other than for personal injury, illness or death of a Guest, whether brought in personam or in rem or based on contract, tort, statutory, constitutional or other legal rights, including but not limited to alleged violation of civil rights, discrimination, consumer or privacy laws, or for any losses, damages or expenses, relating to or in any way arising out of or connected with this Contract or Guest's cruise, no matter how described, pleaded or styled, between the Guest and Carnival, with the sole exception of claims brought and litigated in small claims court, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S. 3, 1970 U.S.T. LEXIS 115, 9 U.S.C. §§ 202-208 ("the Convention") and the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., ("FAA") solely in Miami-Dade County, Florida, U.S.A. to the exclusion of any other forum. Guest hereby consents to jurisdiction and waives any venue or other objection that may be available to any such arbitration proceeding in Miami-Dade, Florida. The arbitration shall be administered by National Arbitration and Mediation ("NAM") under its Comprehensive Dispute Resolution Rules and Procedures and the fee schedule in effect at the

time of initiating the proceeding with NAM, which are deemed to be incorporated herein by reference. If you have a question about the arbitration process or to obtain a current copy of the Comprehensive Dispute Resolution Rules and Procedures and/or fee schedule, you can contact them at: National Arbitration and Mediation, attention Claims Department, 990 Stewart Street, First Floor, Garden City, NY 11530, telephone number (800) 358-2550.

NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES AND HEREIN, OR OTHERWISE TO LITIGATE THE CLAIM IN ANY COURT (OTHER THAN SMALL CLAIMS COURT). THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT GUEST OR CARNIVAL WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION. An award rendered by an arbitrator may be entered in any court having jurisdiction under the Convention or FAA. Carnival and Guest further agree to permit the taking of a deposition under oath of the Guest asserting the claim, or for whose benefit the claim is asserted, in any such arbitration. In the event this provision is deemed unenforceable by an arbitrator or court of competent jurisdiction for any reason, then and only then the provisions of Clause 13 (c) above governing venue and jurisdiction shall exclusively apply to any lawsuit involving claims described in this Clause.

(e) Except as expressly provided in Clause 12 (c), any and all disputes whatsoever arising out of or relating to this Contract or Guest's Cruise as well as the interpretation, applicability and enforcement of this Contract shall be governed exclusively by the general federal maritime law of the United States, without regard to choice of law rules, which replaces, supersedes and preempts any provision of law of any other state or nation.

## 14. CLASS ACTION WAIVER

THIS CONTRACT PROVIDES FOR THE EXCLUSIVE RESOLUTION OF DISPUTES THROUGH INDIVIDUAL LEGAL ACTION ON GUEST'S OWN BEHALF INSTEAD OF THROUGH ANY CLASS ACTION. EVEN IF THE APPLICABLE LAW PROVIDES OTHERWISE, GUEST AGREES THAT ANY ARBITRATION OR LAWSUIT AGAINST CARRIER WHATSOEVER SHALL BE LITIGATED BY GUEST INDIVIDUALLY AND NOT AS A MEMBER OF ANY CLASS OR AS PART OF A CLASS ACTION, AND GUEST EXPRESSLY AGREES TO WAIVE ANY LAW ENTITLING GUEST TO PARTICIPATE IN A CLASS ACTION. IF GUEST'S CLAIM IS SUBJECT TO ARBITRATION UNDER CLAUSE 13 (d) ABOVE, THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ARBITRATE CLAIMS ON A CLASS ACTION BASIS. GUEST AGREES THAT THIS SECTION SHALL NOT BE SEVERABLE UNDER ANY CIRCUMSTANCES FROM THE ARBITRATION CLAUSE SET FORTH IN SECTION 13 (d) ABOVE, AND IF FOR ANY REASON THIS CLASS ACTION WAIVER IS UNENFORCEABLE AS TO ANY PARTICULAR CLAIM, THEN AND ONLY THEN SUCH CLAIM SHALL NOT BE SUBJECT TO ARBITRATION.

## 15. CARNIVAL'S USE OF GUEST'S LIKENESS

Each Guest grants Carnival and/or its promotional partners the exclusive right to include photographic, video and other visual portrayals of Guest in any medium of any nature whatsoever for any purpose including without limitation trade, advertising, sales, publicity or otherwise, without compensation to Guest, and all rights, title and interest therein (including all worldwide copyrights therein) shall be Carnival's sole property, free from any claims by Guest or any person deriving any rights or interest from Guest. Each Guest understands and agrees that professional

onboard photographers may photograph Guest, and that those photos may be processed, displayed and sold to Guests and others.

## 16. GUEST'S USE OF PHOTOS, VIDEOS OR RECORDINGS PROHIBITED

Guest hereby expressly agrees that he/she will not utilize any tape recording, video, or photograph(s) of himself/herself, any other guest, crew, or third party on board the vessel, or depicting the vessel, its design, equipment, or any part thereof whatsoever, for any commercial purpose or in any media broadcast, or for any other non private use, without the express written consent of Carnival. Guest acknowledges that by boarding the vessel, at any time, Guest irrevocably agrees to this provision, which is a condition precedent to being permitted on board the vessel and can be enforced by any legal means, including, but not limited to, injunctive relief.

## 17. GUEST'S OBLIGATIONS FOR EXPENSES OR IF CONFINED, DENIED BOARDING OR DISEMBARKED

(a)  Guest agrees if Carnival incurs any expense or sustains any damage as delineated in but not limited to Clauses 2, 4, 8, 10 and this Clause, that Carnival may charge Guest's on-board charge account for any expense incurred or damage sustained.

(b)  If guest is denied boarding, confined to a stateroom or disembarked from the vessel pursuant to any provision of this contract, including but not limited to Clauses 2, 4. 5, or 8, guest agrees:

i. Carnival will not be liable for any refund of Cruise Fare, other compensation or any damages.

ii. All rights under Carnival's Vacation Guarantee are forfeited. This forfeiture also applies to any guest who disembarks because another guest is disembarked.

iii. Disembarkation and repatriation to the embarkation port or any other destination will be at guest's sole expense.

iv. To indemnify Carnival and that Carnival may charge Guest's on-board charge account for any and all expenses incurred by Carnival in relation to Guest's disembarkation and/or repatriation.

## IMPORTANT TERMS AND CONDITIONS FOR NON CRUISE PORTIONS OF VACATION PACKAGES PLEASE READ CAREFULLY

1. Please see above for the applicable terms and conditions for the cruise portion of Guests vacations. The terms and conditions in this paragraph apply only to Carnival's responsibilities for non cruise portions of vacation packages. Other terms and conditions with respect to air travel, hotel and other non cruise activities may be applied by the entities providing those services.

2. The payment of the required deposit or any partial or full payment for reservation of a land package before or after the cruise shall constitute acceptance and consent to all of the terms and conditions of this Contract and the General Information and Vacation Package Conditions and Restrictions contained in the brochure for such vacation package and/or the brochures and circulars of the suppliers.  These provisions are herby incorporated by reference in this Contract and vacation package Guests (hereinafter referred to as Guests) are advised to take note of them.

3. For purposes of this paragraph "CARNIVAL" refers to Carnival Cruise Lines, its affiliates, subsidiary companies, agents, servants, and employees. CARNIVAL is the principle tour operator and its responsibility to Guests is limited to the arrangement of all tours and accommodations offered in these vacation packages. CARNIVAL shall not be responsible for personal injuries, death, or property damage, economic loss, inconvenience or delay,

consequential damages, or change of itinerary or accommodations incurred by any person or Guest which may occur due to acts or omissions or tortious conduct on the part of any direct or supplemental air carrier, hotel or other suppliers of arrangements and services or other independent contractors, their employees, agents or others not under the direct control of CARNIVAL.

4. CARNIVAL reserves the right to decline to accept or to reject any person as a Guest, at any time, or to cancel a vacation package due to circumstances beyond the control of CARNIVAL.

5. CARNIVAL reserves the right to substitute hotels for other hotels in a similar category, to substitute air carriers, and to change schedules without prior notice should circumstances so require.

6. If a change in the itinerary is needed due to factors or conditions beyond CARNIVAL'S control, no refund or credit will be made, however, CARNIVAL will make an effort to provide accommodations and services of a comparable quality and standard as set forth in the brochure. Any such change shall not modify the cancellation provisions in the brochure. No credit will be allowed nor refund given for any services provided in the brochure should any such services not be utilized by Participants.

7. CARNIVAL makes no representations or warranties, implied or otherwise, in regard to the reliability of suppliers or independent contractors, nor does it assume a duty of safety or responsibility for the independent acts of suppliers, independent contractors, their employees or agents.

8. Vacation packages are non-transferable. Fares shall be deemed to be earned when paid and non-refundable unless otherwise expressly stated in the cancellation provisions in the brochure.

9. CARNIVAL shall not be liable for any claims whatsoever other than for personal injury, illness or death, of the Guest unless full particulars thereof in writing are given to CARNIVAL within 30 days after the Guest shall complete the packages, or in the case that the tour is abandoned, within 30 days thereafter. Suit to recover any claim shall not be maintainable in any event unless commenced within six months after the date of the loss.

10. CARNIVAL shall not be liable for any claims whatsoever for personal injury, or illness or death of the guest unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing.

11. It is agreed by Guest and CARNIVAL that all disputes between Guest and CARNIVAL arising under or in connection with a vacation package shall be litigated, if at all, in and before the United States District Court for the Southern District of Florida in Miami-Dade County, Florida, U.S.A., to the exclusion of the courts of any other state or county.

## IMPORTANT ADDITIONAL TERMS AND CONDITIONS FOR FLY AWEIGH AIR FARE SUPPLEMENTS

1. **Arrangements by CARNIVAL:** If you are participating in our Fly Aweigh® program or Fly Aweigh® and Tour package, Carnival will arrange for air transportation from the select home cities offered to an airport near the departure point of your Cruise or Cruise tour and return air transportation from an airport near the termination point of your Cruise or Cruise tour to the home city from which you departed. Please refer to Carnival's web page for additional information on our Fly Aweigh® program and destinations. Carnival reserves the right to add or

withdraw a Fly Aweigh® city at any time, but will attempt to accommodate those Guests under deposit or final payment. Fly Aweigh® bookings are not guaranteed and are subject to air carrier's availability and restrictions. Due to the special fares and capacity limitations imposed by the airlines, Carnival retains the right to select carriers and determine routings. Some routings may involve travel to an airport other than in the city where the ship embarks or disembarks; in those cases, subject to availability, Carnival will offer motor coach transportation to and/or from the ship as an optional service at an additional cost. Flight schedules and/or availability may require overnight hotel accommodations either to join and/or to return from your cruise or cruise tour; only in those instances, where an overnight stay is required, Carnival will cover the cost for the hotel, taxes, porterage and transportation between the hotel and the airport/pier; any additional expenses will be the responsibility of the Guest. Please refer to Carnival's web site for full and up to date Carnival's policies on booking hotels and responsibility for the costs of hotels and associated services.

**2. Schedule Changes/Air Delays:** Carnival strives to accommodate each guest on flights that will ensure timely arrival and boarding of your ship. In the event that the guest is precluded from a timely arrival to the port of embarkation, as a result of weather conditions or other flight delays, Carnival, at its own expense, will make the flight, transportation, and lodging arrangements necessary to coordinate for the guest's successful boarding at ship's next port of call. Carnival reserves the right to change or alter, without notice, flight arrangements in order to meet our ship departure and/or arrival times. If tickets have already been issued, Carnival will adjust your itinerary or air carrier accordingly. If a paper ticket has been issued, Carnival may ask you to return your tickets to your travel agent or Carnival. If you choose to cancel your flight arrangements or alter your airline schedule in any way once your tickets have been issued (except when an itinerary or carrier adjustment has occurred), you will be responsible for any additional cost or fees resulting from the cancellation or change, which can total up to the full cost of the ticket. If you request Carnival's assistance with a change in airline arrangements, within 60 days of departure, a service fee of $150 USD, or its equivalent in foreign currency, will be levied in addition to any charges imposed by the airlines. If your flights are delayed, refer www.carnival.com/flyaweigh.

**3. Refunds/Seat Assignments/Special Services/Fares/Lost Tickets/Baggage Charges:** Tickets are issued at the lowest applicable economy fare available and all fare restrictions apply. Failure to use your tickets results in a waiver of its value and any compensation; unused airline tickets are only refundable to Carnival. Please note that because of changing airline tariffs, your actual air ticket may reflect fares higher or lower than the air add-on or cruise only credit amounts originally quoted. If so, the difference is neither chargeable nor refundable to you; you will be charged the amount originally quoted. Carnival reserves the right to pass on to the Guest any cancellation or change penalties, which may total up to the amount originally quoted. It is your sole responsibility to re-confirm flight arrangements, within 48 hours of flight departure, to request seat assignments, special meals and/or other special services directly with the airline. Carnival is not responsible for airline schedule changes. Guests are responsible for luggage fees, excess luggage charges as well as any other charges imposed by airlines or airports. For additional information on airline's baggage charges and fees please refer www.carnival.com/airlinebaggagefees or reference against the flight information page in your cruise document accessed through Manage My Cruise. You are responsible for the cost of replacing lost paper tickets. If a paper ticket is issued instead of an E-ticket, the original paper ticket must be returned to Carnival; any outstanding refund will be held pending the receipt of the paper tickets. A lost ticket application fee of $200 USD, or its equivalent in foreign currency, per ticket may be assessed if a paper ticket is not returned.

**4. Liability and Relationship with Airlines:** If Carnival is unable to arrange for air transportation for any cause beyond Carnival's control, such as airline capacity controls, air

transportation arranged is no longer available, or otherwise fails to materialize, Carnival's sole liability will be limited to refunding the air add-on paid or cruise only credit. Carnival acts as an independent travel agent, and it is not affiliated with the airline carriers. Carnival books air as a convenience for the Guests. Carnival assumes no liability for any of the airlines' acts or omissions, including, without limitation, those involving cancellation of flights, schedule changes, re-routings, damage to or delay or loss of baggage, flight delays, equipment failures, accidents, pilot or other staff shortages, overbooking or clerical/system errors. Your rights against the airlines are controlled and subject to the terms and conditions set forth in the airline's ticket and tariffs, and any and all applicable laws and regulations.

- **Special Offers**

- Cruise Deals
- Early Saver Specials
- VIFP Club Offers
- Gift Cards

- **Book A Cruise**

- Find a Port
- Find a Cruise
- Find a Travel Professional
- Great Vacation Guarantee
- Lowest Price Guarantee
- Vacation Protection
- Cruise-A-Nalities

- **Group Travel**

- Contact a Group Planner
- Group Shore Excursions
- Charters, Meetings & Incentives
- Themed Cruises
- Weddings & Occasions

- **Already Booked**

- Manage My Cruises
- Before You Cruise FAQs
- Airport Transfers
- In-Room Gifts & Shopping
- Shore Excursions
- Carnival LIVE Tickets
- Hotel Packages
- Organizer Access

- **Customer Service**

- Carnival FAQs
- Contact Us
- Travel Documentation
- Cruise Reviews

- Support Forums
- Embarkation Information
- Guests with Disabilities
- Cruise Ticket Contract
- Passenger Bill Of Rights

  - **About Carnival**

- Press / Media
- St Jude
- Carnival Foundation
- Safety and Security
- Sustainability
- Business Ethics
- Investor Relations
- World's Leading Cruise Lines

- About Carnival
- Legal Notices
- Privacy Policy
- Careers
-

# EXHIBIT 2

# CARLOS A. LOPEZ-ALBEAR, P.A.

Attorney at Law
1545 S.W. 1st Street, Suit 300
Miami Florida 33135
Phone: (305) 644-3217

March 3, 2015

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED 7011 2000 0001 9751 1951**
CARNIVAL CORPORATION
3655 NW 87th Avenue
Miami, FL 33178-2428

| | |
|---|---|
| **RE:   JESUS LIZARAZO** | **BOOKING:  4C4VTO** |
| **DATE OF DEPARTURE: January 17, 2015** | **ITINERARY: 8 DAYS** |
| **VESSEL:  CARNIVAL BREEZE** | **STATE ROOM # 9418; 9th Deck** |
| **PORT OF DEPARTURE:  PORT OF MIAMI, FLORIDA** | |
| **D/O/A:       January 19, 2015** | |

To Whom It May Concern:

Please be advised that the undersigned represents Jesus I. Lizarazo for injuries sustained by Mr. Lizarazo which occurred on the evening of January 19, 2015. The injury occurred while he was sailing as a passenger aboard the Carnival Breeze. Specifically, it is alleged that employees of the Carnival Corporation solicited Mr. Lizarazo and his wife to have their photograph taken on the ship and negligently directed Mr. Lizarazo to walk through a corridor and/or area on the ship which was dark, not properly illuminated and which was obstructed with hazardous objects which where negligently situated and/or permitted to remain in the pedestrian areas at or near the situs of the incident where Mr. Lizarazo was to be photographed with his family. As a result Mr. Lizarazo was caused to slip and fall.

Mr. Lizarazo sustained a severe injuries and was provided with initial medical treatment and x-rays for his injuries by the ship's doctor which revealed that he suffered severe injuries to his left leg; which required him to be wheel chair bound on the ship for the remainder of his voyage on the Carnival Breeze. He has currently undergone two (2) MRI studies which reveal that he has sustained a fracture of the patella of the left knee as well as a complete tear of the rectus femoris ligament which shall require surgical intervention.

We trust that this satisfies your requirement under the passenger contract to provide you with particulars of the incident.

I am also enclosing the documents in our possession identifying the subject cruise.

In addition, I am requesting that if there are any closed circuit video tapes depicting the incident that they be preserved.  In addition, I would ask that video tapes of the area for the 30 minutes prior to the incident leading up to the time of the incident also be preserved.

Very truly yours,

CARLOS A. LOPEZ-ALBEAR, ESQ.

Enclosures as stated.

English     Customer Service     USPS Mobile                                    Register / Sign In

# ✉USPS.COM®

## USPS Tracking®



**Customer Service ›**
Have questions? We're here to help.



**Get Easy Tracking Updates ›**
Sign up for My USPS.

Tracking Number: 70112000000197511951

## Product & Tracking Information

Postal Product:                  Features:
                                 Certified Mail™

## Available Actions

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| March 7, 2015 , 11:46 am | Delivered | MIAMI, FL 33178 |

Your item was delivered at 11:46 am on March 7, 2015 in MIAMI, FL 33178.

| March 7, 2015 , 12:32 am | Departed USPS Facility | OPA LOCKA, FL 33054 |
| March 6, 2015 , 2:03 am | Arrived at USPS Facility | OPA LOCKA, FL 33054 |

## Track Another Package

Tracking (or receipt) number

| 70112000000197511951 |                           Track It |

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

**Sign up for My USPS ›**

HELPFUL LINKS          ON ABOUT.USPS.COM          OTHER USPS SITES              LEGAL INFORMATION
Contact Us             About USPS Home            Business Customer Gateway     Privacy Policy
Site Index             Newsroom                   Postal Inspectors             Terms of Use
FAQs                   USPS Service Updates        Inspector General            FOIA
                       Forms & Publications       Postal Explorer               No FEAR Act EEO Data
                       Government Services         National Postal Museum
                       Careers                    Resources for Developers

Copyright © 2015 USPS. All Rights Reserved.

Search or Enter a Tracking Number

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

## OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006                    See Reverse for Instructions

7006 0001 4751 1951

2/2/2015 9:52 PM FROM: Fax   TO: +1 (240) 912-2381   PAGE: 001 OF 001

# Bethesda MRI

## MRI·CT·X-RAY·ULTRASOUND

BETHESDA MRI
3202 Tower Oaks Blvd. Suite 120
Rockville, MD 20852
Phone: (301) 657-2444
Fax: (301) 657-2450

Exam requested by:
MATTHEW ZIMMERMAN
6430 ROCKLEDGE DRIVE SUITE 510
BETHESDA MD 20817

Patient: LIZARAZO, JESUS
Date of Birth: 06-22-1943
Phone: (301) 908-7349
MRN: E6071 Acc: E105479
Date of Exam: 02-02-2015

EXAMINATION: MRI OF THE LEFT KNEE

CLINICAL INDICATION: Suprapatellar pain. Evaluate tear of the quadriceps muscle. Status post mechanical aortic valve replacement. The patient is taking Coumadin.

TECHNIQUE: The examination was performed on a 3 Tesla large bore MRI system. Sagittal T1 and T2 weighted images, axial T2 weighted images were obtained.

COMPARISON STUDY: None available.

FINDINGS: The study was centered over the suprapatellar region. There is slight motion artifact and the sagittal T2 weighted images were repeated.

Menisci: The medial and lateral meniscus are normal, with no evidence of a meniscal tear.

Osteoarticular structures: The femoral condyles, the tibial plateau and the patella are normal. There is no osteochondral lesion. No subchondral edema is noted. There is no avascular necrosis. There is a small joint effusion and the posterior Baker cyst. Hoffa's fat pad is unremarkable.

Tendons and ligaments: The study confirms a complete tear of the rectus femoris muscle immediately above its insertion in the patella. There is a moderate associated hematoma the myotendinous junction probably aggravated by the patient's anticoagulant treatment with Coumadin. The vastus intermedius, lateralis and medialis muscles and tendons are normal.

The cruciate ligaments, the collateral ligaments and the patellofemoral ligaments are normal. The patellar tendon is unremarkable. The popliteus and biceps femoris are normal.

IMPRESSION: Complete tear of the rectus femoris immediately above its insertion in the patella with a moderate associated hematoma at the myotendinous junction of the rectus femoris muscle. Small joint effusion.

Otherwise normal knee MRI. No evidence of a meniscal tear, osteochondral lesion or ligamentous injury.

*Thank you for referring your patient to BETHESDA MRI*

Alexander S. Mark, MD
*Electronically Signed: 02-02-2015 9:56 PM*

The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named as recipient. If the reader is not the intended recipient, be hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you!

# IMPORTANT- Jesus I Lizarazo Injury -Carnival X-Ray and MRI Report

From:  **cubacombia@comcast.net**
Sent:  Mon 3/02/15 9:49 PM
To:    clapa@bellsouth.net; jdy906@hotmail.com; 'Albert Quirantes' (amq-messages@hotmail.com)
       1 attachment
       CCE03022015_0001.pdf (964.5 KB)

As per your request please find enclosed reports by ;

**Primary Physician:**

X-RAY    Parnkaj Talwar Md.  Telf: 301-762-3030

**Orthopedic Surgeon:**

MRI    Dr. Matthew Zimmerman 301-515-0900

**Radiologists:**

**Dr. Alexander S. Mark**

**Dr. Jonathan R Bowles**

Both of the above physicians have offered additional information related to this injury if requested . ,

Dr Talwar has blood results which shows other affected organs that were affected from this traumatic accident,

Witness at accident scene: Alicia Lizarazo    Ph # 301-908-7349

Jasmin Lizarazo  Ph# 301-908-7350

Patria Lamadriz   Ph # 305-822-3441

Please do not hesitate to ask myself, or any of the witness their version of how the accident  happened and the extend trauma suffered to the injured person .

Wheel Chair

Walker

Cane

Braces etc...

Sincerely,

Jesus I Lizarazo.

**Carnival**

Lizarazo, Jesus
VIFP #: 0240375170 - Gold

BOARDING PASS

Aboard
Carnival Breeze

Stateroom
9418

Dock
9

Booking Number
4C4VT0

Sail Date and Departure Time
January 17, 2015 at 4:00PM

Embarkation
1:00PM - 3:00PM

From
Port Of Miami
1435 North Cruise Boulevard, Miami, Fl 33132

Important Information

We highly recommend that you check-in at least one hour prior to our scheduled departure. Please keep in mind that you may not be able to embark if you arrive later than 30 minutes prior to sail time.

Transfer Services
Not Purchased

Running Late?
Call 1.877.885.4856 or
305.406.4779

Smoking Policy: Effective October 9, 2014, all staterooms and suites, inclusive of the balconies, are an entirely smoke-free environment as per cruise ticket contract, guests who smoke in their staterooms will be assessed a $250 USD cleaning and refreshing fee on their Sail & Sign account.
Visitors Policy: For security reasons, Carnival has a No Visitors policy and regrets any inconvenience this may cause.
Identification Requirements: U.S. security procedures require all guests 16 years of age and older to present a government issued photo identification upon airport and cruise line check-in. All guests must present proof of citizenship and any necessary visas at embarkation (visit us @ www.carnival.com for more information on acceptable WHTI travel documentation). Guests without proper documentation will be denied boarding and no refund will be issued.

## REPORT OF CONSULTATION



SHADY GROVE
RADIOLOGY

Name: LIZARAZO, JESUS                                    MRN: 462720

DOB: 06/22/1943                                          Date: 01/29/2015

Physician:   PANKAJ TALWAR, MD
             50 W EDMONSTON DR
             STE 401
             ROCKVILLE MD 20852

CLINICAL HISTORY: Injury. The patient fell 01/20/2015. Severe upper thigh and left knee pain with decreased range of motion.

LEFT FEMUR, FOUR FILMS

RESULTS:

There is no evidence of acute displaced fracture of the left femur. There is chondrocalcinosis of the lateral and medial femoral - tibial compartments. Surgical clips in the medial left thigh and medial knee. There is no dislocation of the left hip. There is small ossific density seen anterior to the distal femur suspicious for chip/avulsion fracture of the superior patella with associated distal quadriceps tendon tear. Correlate clinically.

IMPRESSION:
1. SMALL OSSIFIC DENSITY ANTERIOR TO THE DISTAL FEMUR SUSPICIOUS FOR CHIP/AVULSION FRACTURE OF THE SUPERIOR PATELLA WITH ASSOCIATED DISTAL QUADRICEPS TENDON TEAR.

CASE DISCUSSED WITH DR. TALWAR ON 01/29/2015 AT 01:53 P.M..

This report has been electronically signed.

Dictated by: JONATHAN R. BOWLES MD
JRB/vr
Report approved: 01/29/2015 06:55 PM
Cc:



Passenger's Name: Jesus I Lizarazo

Booking # 4C4VTO

Date 01-17- to -01-25-2015

Terms and Conditions................ JURISDICTION

This site is controlled and operated by CARNIVAL from its offices within the State of Florida, United States of America. CARNIVAL makes no representation that materials in the site are appropriate or available for use in other locations. These terms shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to any principles of conflicts of law. You agree that any action at law or in equity arising out of or relating to these terms shall be filed only in the state or federal courts located in Miami-Dade County and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action. – See more at: http://secure.carnival.com/about-carnival/legal-notice/termsandconditions.aspx#sthash.82NuPKBh.dpuf

Hi; Here is a copy of my Ticket contract you can find more info here:

See more at: http://secure.carnival.com/about-carnival/legal-notice/ticket-contract.aspx?icid=CC_Footer_84#sthash.WzQycVKj.dpuf

# TICKET CONTRACT

IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW.

NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1, 4, AND 11 THROUGH 14, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING

FORUM SELECTION, CHOICE OF LAW, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.

IMPORTANT TERMS AND CONDITIONS OF CONTRACT –
READ CAREFULLY

In consideration of the receipt of the full cruise fare, Carnival Cruise Lines ("Carnival") agrees to transport Guest on the above - specified voyage on the following terms and conditions:

## 1. DEFINITIONS AND SCOPE OF CONTRACT

(a) Whenever the word "Carnival" is used in this Contract it shall mean and include the Vessel, its owners, operators, employees, agents, charterers and tenders. The term "Guest" shall include the plural where appropriate, and all persons or entities booking or purchasing passage and/or traveling under this Contract, including heirs, representatives and any accompanying minors. The masculine includes the feminine. "Guest" shall have the same meaning as "Passenger" in this Contract.

(b) "Cruise Fare" or "Fare" means the amount paid for the cruise which includes full board, ordinary ship's food during the voyage, but not gratuities, spirits, wine, beer, soft drinks or mineral waters, shore excursions, salon and spa services, Carnival LIVE concerts, or any other incidental charge or expense. The cruise fare shall be deemed to be earned when paid and not refundable except as stated in Carnival's brochure applicable to the voyage and as provided in Clauses 7 and 8, herein.

(c) Cruise Fare does not include Cruise Taxes, Fees, and Port Expenses. "Cruise Taxes, Fees, and Port Expenses" may include any and all fees, charges, tolls and taxes imposed on Carnival, by governmental or quasi-governmental authorities, as well as third party fees and charges arising from a vessel's presence in a harbor or port. Cruise Taxes, Fees and Port Expenses may include U.S. Customs fees, head taxes, Panama Canal tolls, dockage fees, wharfage fees, inspection fees, pilotage, air taxes, hotel or VAT taxes incurred as part of a land tour, immigration and naturalization fees, and Internal Revenue Service fees, as well as fees associated with navigation, berthing, stevedoring, baggage handling/storage, and security services. Cruise Taxes, Fees, and Port Expenses may be assessed per passenger, per berth, per ton or per vessel. Assessments calculated on a per ton or per vessel basis will be spread over the number of passengers on the Vessel. Cruise Taxes, Fees and Port Expenses are subject to change and Carnival reserves the right to collect any increases in effect at the time of sailing even if the fare has already been paid in full.

(d) Cruise Fare does not include fuel supplement charges, security surcharges, or similar incidental surcharges ("surcharges"); Carnival reserves the right to impose or pass any of these surcharges and no right of cancellation shall be implied. "Fuel supplement" shall mean any additional charge to defray a portion of Carnival's fuel costs. The amount of fuel supplements and government fees and taxes collected are subject to change. Carnival reserves the right to charge a fuel supplement of up to $9.00 USD, or its equivalent in foreign currency, per person per day, without prior notice, in the event that the price of light sweet crude oil according to the NYMEX (New York Mercantile Exchange Index) is greater than $70.00 USD per barrel of oil. Carnival may collect any fuel supplement in effect at the time of sailing, even if the cruise fare has been paid in full.

(e) This ticket is valid only for the person(s) named hereon as Guests and cannot be transferred or modified without Carnival's written consent. The acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this cruise Contract.

(f) All rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's facilities, whether at sea or ashore, servants, agents, managers, affiliated or related companies, suppliers, shipbuilders and manufacturers of component parts and independent contractors, including, but not limited to, shore excursion or tour operators, ship's physician, ship's nurse, retail shop personnel, health and beauty staff, fitness staff, video diary staff, and other concessionaires, who shall have no liability to the Guest, either in contract or in tort, which is greater than or different from that of Carnival.

(g) Except as otherwise expressly provided herein, this contract constitutes the entire agreement between Carnival and Guest and supersedes all other agreements, oral or written. Any alteration to any term of this contract must be in writing and authorized by Carnival. In the event of a direct conflict between a provision of this contract and a provision of the *Cruise Industry Passenger Bill of Rights* (PBOR) in effect at the time of booking PBOR controls. Guests purchasing Carnival LIVE concert tickets, spa services or shore excursions through Carnival are subject to the additional terms and conditions at http://www.carnival.com/legal/shore-excursions-terms.aspx which are incorporated by reference. Except as provided in Clause 13 below, should any provision of this contract be contrary to or invalid by virtue of the law of the jurisdiction in which this contract is sought to be enforced or be so held by a court of competent jurisdiction, such provision(s) shall be deemed to be severed from the Contract and of no effect and all remaining provisions herein shall be in full force and effect and constitute the Contract of Carriage.

## 2. NATURE OF CRUISE AND GUEST'S OBLIGATIONS

(a) The Guest admits a full understanding of the character of the Vessel and assumes all risks incident to travel and transportation and handling of Guests and cargo. While at sea or in port the availability of medical care may be limited or delayed. Guest acknowledges that all or part of their voyage may be in areas where medical care and evacuation may not be available. Guest agrees to indemnify and reimburse Carnival in the event Carnival elects to advance the cost of emergency medical care, including medical care provided ashore as well as transportation and/or lodging in connection therewith.

(b) Carnival's vessels visit numerous ports in a number of countries. Guests assume responsibility for their own safety and Carnival cannot guarantee Guest's safety at any time. The United States Department of State, Centers for Disease Control and Prevention and other governmental and tourist organizations regularly issue advisories and warnings to travelers and Carnival strongly recommends Guests obtain and consider such information when making travel decisions. Carnival assumes no responsibility for gathering said information. The Guest acknowledges that the cruise may be booked in a location that is susceptible to severe weather systems, including but not limited to, hurricanes, tropical storms and depressions, and that Carnival reserves the right to alter the ship's course, ports of call, itinerary, activity and shore excursions to avoid such weather systems and insure the comfort and safety of the Guest and crew.

(c) Proper travel documentation and eligibility to travel is required at the embarkation and throughout the cruise. In addition to immigration and customs requirements, the U.S. government and others place restrictions on the carriage of guests whose names appear on government watch lists or who are deemed legally ineligible to travel. It is the guest's sole responsibility to ensure his/her legal eligibility to travel and to bring and have available at all times all required travel documents. Guests are advised to check with their travel agent or the appropriate government authority to determine the necessary documents and travel eligibility requirements. Carnival may cancel the booking of any guest who is or becomes ineligible to travel for any reason, or who is traveling without proper documentation. Any such Guest, or any

Guest who fails to board the ship at embarkation, shall be ineligible to board the ship thereafter without Carnival's consent, and shall not attempt to do so at the same or another port. Under these circumstances the Guest shall not be entitled to a refund or compensation of any kind. Guest is responsible for all related costs and fines, including without limitation travel expenses and for proper travel documentation for any port, or for departure from or arrival to the US. Under no circumstances shall Carnival be liable for any costs, damages or expenses whatsoever incurred by any Guest as a result of such failure, cancellation or denial of boarding.

(d) Guest acknowledges receipt of Carnival's applicable brochures and agrees to abide by the terms and conditions of Carnival's brochures and web site, including but not limited to the information contained in the "Frequently Asked Questions" and "Embarkation Information" sections.

(e) Guest acknowledges that, for a voyage commencing in a United States port for a round-trip voyage via one or more United States ports, Guest must complete the voyage and disembark at the embarkation port. Failure to do so may result in a fine or penalty being imposed by the United States Customs Service or other governmental agency. In consideration for the fare paid, Guest agrees to pay any such fine or penalty imposed because of Guest's failure to complete the voyage.

(f) Carnival shall refuse boarding to any Guest under the age of twenty-one unless: (1) the Guest is traveling in the same stateroom with an individual twenty-five years or older; (2) traveling in the same stateroom with their spouse; or (3) traveling with a parent or guardian in an accompanying stateroom. Adult guests agree to be responsible at all times for the safety and behavior of their minor guests. Proof of age and/or proof of marriage are required. Carnival shall not be liable to make any refunds or for any damages with respect to any Guest's failure to provide proper proof of age or marriage or otherwise comply with this provision.

(g) Guests must attend the mandatory safety briefing at the commencement of the cruise and any subsequent briefing ordered by the ship's officer during the cruise. Guests shall comply with all onboard health and safety policies and procedures, and shall familiarize themselves with the nature and character of the ship, as well as, all emergency exits, to assist with safe evacuation in the event of an emergency.

### 3. YOUR TRAVEL AGENT

Any travel agent or sales agent utilized by the Guest in connection with the booking of the cruise, or this contract is solely the agent of the Guest and not Carnival. Carnival is not responsible for the financial condition or integrity of any travel agent utilized by Guest. In the event that an agent shall fail to remit to Carnival any monies paid to the agent by Guest, Guest shall be and remain liable for the fare due to Carnival, regardless of whether liability is asserted before or after embarkation. Issuance and validity of ticket contract is conditional upon final payment being received by Carnival prior to sailing. Any refund made by Carnival to an agent on behalf of Guest shall be deemed payment to Guest, regardless whether the monies are delivered by the agent to Guest. Receipt of this ticket contract, any other documentation or notification pertaining to the cruise by Guest's travel agent shall constitute receipt by Guest.

### 4. BAGGAGE, PERSONAL PROPERTY, PROHIBITED ITEMS, LIMITATION OF LIABILITY

(a) Each fully paid adult Guest will be allowed a reasonable amount of luggage on board containing their personal belongings. Luggage means only trunks, valises, satchels, bags, hangers and bundles with their contents consisting of only such wearing apparel, toilet articles and similar personal effects as are necessary and appropriate for the purpose of the journey.

(b) No tools of trade, household goods, presents and/or property of others, jewelry, money, cameras, documents, valuables of any description including but not limited to such articles as are described in Title 46 of the United States Code section 30503 shall be carried except under and subject to the terms of a special written contract or Bill of Lading entered into with Carnival prior to embarkation upon application of the Guest. The Guest warrants that no such articles are contained in any receptacle or container presented by him as baggage hereunder, and if any such articles are shipped in the Guest's baggage in breach of this warranty, no liability for negligence, gross or ordinary, shall attach to Carnival for any loss or damage thereto.

(c) Carnival shall not be liable for: (1) Guest's failure to comply with the requirements set forth in Clauses 4(a) and 4(b); (2) any loss or damage before baggage comes into Carnival's actual custody on board or after baggage leaves Carnival's actual custody on board, including, but not limited to, loss or damage by airlines or other transportation services; (3) any loss or damage of baggage while not in the actual possession, custody and control of Carnival; (4) damage due to wear, tear or normal usage; (5) any loss or damage of perishable items, medicine, liquor, cash, securities or other financial instruments, or (6) any loss or damage while in the custody and control of stevedores.

(d) It is stipulated and agreed that the aggregate value of Guest's property, does not exceed $50 USD per guest or bag with a maximum value of $100 USD per stateroom regardless of the number of occupants or bags and any liability of Carnival for any cause whatsoever with respect to said property shall not exceed such sum, unless the Guest shall in writing, delivered to Carnival, prior to embarkation, declare the true value thereof and pay to Carnival prior to embarkation a sum equal to 5% of the excess of such value. If Carnival shall be held liable for the loss of or damage to Guest's baggage or property it is agreed that such liability shall not exceed the lesser of: (1) the actual cash value, or (2) value declared in the manner above provided (up to U.S. $100 USD if no such declaration has been made). Declared value amounts to be proportionately reduced in any case where less than all of Guest's baggage or property is lost, delayed or rendered unusable due to damage. In no event shall Carnival be liable to pay any compensation if the nature or value of the property has been misrepresented.

(e) No Guest is permitted, to bring on board the vessel live animals (other than qualified service animals, with not less than 14 days advance notice given to Carnival). Guest will be solely responsible for any and all damage and/or loss caused by service animals.

(f) Weapons, firearms, contraband, ammunition, explosives, incendiary devices, or other dangerous items are strictly prohibited aboard the vessel. Carnival reserves the right to confiscate, destroy and/or turn over to authorities these or any other items it deems in its sole discretion to be detrimental to the safety or comfort of any person or which are otherwise improperly in the possession of any Guest. Each Guest warrants that no such articles are contained in any receptacle or container carried or presented as baggage. Alcoholic beverages are prohibited except as provided for in clause 8(f). All Guests agree Carnival has, at all times with or without notice, the right to search Guest's baggage and/or personal effects for any of the prohibited items, at any location, to ensure compliance with these restrictions. Any Guest who refuses any such search or screening, or any Guest traveling with such items, may be denied boarding or disembarked and no refund of the cruise fare will be issued. The Guest will be solely responsible for any and all damage and/or loss caused by his violation of this policy.

## 5. FITNESS TO TRAVEL, SPECIAL NEEDS, PREGNANCY, INFANTS, DRINKING, DISEMBARKATION

(a) The Guest warrants that he and those traveling with him are physically and emotionally fit to travel at the time of embarkation, and further certifies that such Guests have no medical or emotional condition that would endanger any Guest or others. Any Guest with special medical,

physical or other needs requiring medical attention or special accommodation during the voyage is requested to notify Carnival in writing at the time of booking of such special need. Upon booking the cruise, guests who have special needs are requested to contact Carnival's Special Needs Desk (305-599-2600 ext. 70025) to discuss the details of their special need. Carnival recommends that any Guest who is not self-sufficient travel with a companion who shall take responsibility for any assistance needed during the voyage and in case of emergency

(b) Carnival and the Master each reserves the right to refuse passage, disembark or confine to a stateroom any Guest whose physical or mental condition, or behavior would be considered in the sole opinion of the Captain and/or the ship's physician to constitute a risk to the Guest's own well-being or that of any other Guest or crew member. Guest understands and acknowledges that in addition to the limitations on medical care described in Clause 2 (a), prenatal and early infant care, in particular, may require specialized diagnostic facilities and/or treatment that are not obtainable during the cruise on board the ship and/or ashore in ports of call. Therefore, the Guest agrees not to book a cruise or board the ship if at any time during the cruise she will enter the 24th week of estimated gestational age, nor for or with infants less than six months old--for trans-ocean crossings, South America and Hawaii the infant must be at least twelve months of age at the time of embarkation to sail. Carnival and the Master reserve the right to disembark any guest whose behavior affects the comfort, enjoyment, safety or well being of other guests or of any crew. All expectant Guests further agree to provide Carnival, prior to embarkation, with a physician's statement verifying that her gestational status is in accordance with this policy, and certifying her fitness to travel even if she will be less than twenty-four weeks pregnant. Failure to do so shall result in the cancellation of the Guest's reservation without refund, compensation or payment except as set forth in Carnival's cancellation policy described in Clause 6, based on the timing of such cancellation.

### 6. CANCELLATION BY GUEST, REFUNDS

Reservations will be held until 30 minutes prior to departure. No refunds will be made in the event of "no shows", unused tickets, lost tickets, interruptions, partially used tickets, cancellations received late or after the start of the cruise, or for Pack & Go program purchases. Carnival strongly recommends the purchase of trip cancellation insurance from your travel agent. Cancellation charges for individual bookings will be assessed as listed below. For cancellation charges related to group bookings, partial ship charters or full ship charters refer to your charter contract or group booking agreement for terms and conditions.

| | DAYS PRIOR TO DEPARTURE DATE | CANCELLATION CHARGE(per guest) |
|---|---|---|
| 2,3,4 & 5 day cruises | Up to 61 days | None (except Cruises to Nowhere*** and Early Saver*, Easy Saver*, and Super Saver fares**) |
| | 60 to 46 days | Deposit*** |
| | 45 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
| | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
| | 14 days or less | 100% of Total Fare |
| 6 day or longer cruises (excluding Europe, Transatlantic, Panama | Up to 76 days | None (except Early Saver*, Easy Saver*, and Super Saver fares**) |

| Canal and Transpacific cruises) | 75 to 56 days | Deposit |
| | 55 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
| | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
| | 14 days or less | 100% of Total Fare |
| Europe Cruises, Transatlantic Cruises, Panama Canal Cruises & Transpacific Cruises | Up to 91 days | None (except Early Saver*, Easy Saver*, and Super Saver fares**) |
| | 90 to 56 days | Deposit |
| | 55 to 30 days | Deposit or 50% of Total Fare, whichever is greater |
| | 29 to 15 days | Deposit or 75% of Total Fare, whichever is greater |
| | 14 days or less | 100% of Total Fare |
| All cruises purchased under the Instant Saver fare | Any time after booking | 100% of Total Fare |

Total Fare is defined as Cruise Fare, Air Supplement, Transfer Services and Pre/Post Cruise Vacation Packages.

*Early Saver & Easy Saver: The deposit is non-refundable. All cancellations that occur prior to final payment due date will receive a non-refundable and non-transferable future cruise credit, redeemable for US dollars bookings, in the amount of the deposit less a $50 pp service fee. The future cruise credit must be used on a sailing within 24 months from the date of cancellation and can only be applied to your cruise fare. Any unused portion will be forfeited.

**Super Saver: The deposit is non-refundable.

***For Cruises to Nowhere, the cancellation charge is 25% of Total Fare.

## 7. CARNIVAL'S RIGHT TO INCREASE FARES, CANCEL OR CHANGE VOYAGE, CHANGE STATEROOM ASSIGNMENTS:

(a) Carnival reserves the right to increase published fares and air fare supplements without prior notice. However, fully paid or deposited guests will be protected, except for fares listed, quoted, advertised or booked in error, fuel supplements, government taxes, other surcharges and changes to deposit, payment and cancellation terms/conditions, which are subject to change without notice. In the event that a cruise fare listed, quoted or advertised through any website, Carnival sales person, travel agent or any other source is booked but is incorrect due to an electronic error, typographical error, human error or any other error causing the fare to be listed, quoted or advertised for an amount not intended by Carnival, Carnival reserves the right to correct the erroneous fare by requesting the Guest to pay the correct fare intended, or by canceling the cruise in exchange for a full refund, but in no event shall Carnival be obligated to honor any such booking resulting from the error or otherwise be liable in such circumstances.

(b) Carnival reserves the right to offer promotional cruise fares that require a minimum occupancy requirement per cabin. When the booked cruise fare is contingent on a minimum occupancy requirement per cabin, cancellation by one or more guests in a cabin may cause an adjustment to the remaining guests booked cruise fare based on the prevailing and available rate at the time of the cancellation ("recalculated fare"). Final payment in full of the recalculated fares for all remaining guests in a cabin is due by 11:59:59 p.m. EST on the eve before the start of the cancellation penalty period. Failure to make timely final payment in full of the recalculated fares by all remaining guests in a cabin will result in automatic cancellation of the reservation for the entire cabin.

(c) Carnival has the right without previous notice to cancel this contract at the port of embarkation or any time during the voyage and shall thereupon return to the Guest, if the Contract is completely canceled, his Cruise Fare, or, if the Contract is partially canceled, a proportionate part thereof. Under such circumstances, Carnival shall have no further liability for damages or compensation of any kind. In the event a voyage is terminated early due to mechanical failure of the Vessel, Guest is also entitled to transportation to the Vessel's scheduled port of disembarkation or Guest's home city, at Carnival's discretion and expense, as well as necessary lodging at the unscheduled port of disembarkation, if required, at Carnival's expense.

(d) The Vessel shall be entitled to leave and enter ports with or without pilots or tugs, to tow and assist other vessels in any circumstances, to return to or enter any port at the Master's discretion and for any purpose, and to deviate in any direction or for any purpose from the direct or usual course, and to omit or change any or all port calls, arrival or departure times, with or without notice, for any reason whatsoever, including but not limited to safety, security, adverse weather, strikes, tides, hostilities, civil unrest, port closings, emergency debarkations of Guests or crew, late air, sea, car or motor coach departures or arrivals, mechanical breakdowns, US or foreign governmental advisories or travel warnings, all such deviations being considered as forming part of and included in the proposed voyage. Except as provided in Clause 7(c) with regard to early termination of a voyage, Carnival shall have no liability for any compensation or other damages in such circumstances other than as provided by Carnival's change of itinerary policy at the time Guest or his agent acknowledges receipt and acceptance of the terms and conditions of the cruise ticket contract. Carnival's change of itinerary policy can be found at www.carnival.com or at www.carnival.com/faq.

(e) Except as provided in Clause 7(c), if the performance of the proposed voyage is hindered or prevented (or in the opinion of Carnival or the Master is likely to be hindered or prevented) by war, hostilities, blockage, ice, labor conflicts, strikes on board or ashore, restraint of Princes, Rulers or People, seizure under legal process, breakdown of the Vessel, congestion, docking difficulties or any other cause whatsoever or if Carnival or the Master considers that for any reason whatsoever, proceeding to, attempting to enter, or entering or remaining at the port of Guest's destination may expose the Vessel to risk or loss or damage or be likely to delay her, the Guest and his baggage may be landed at the port of embarkation or at any port or place at which the Vessel may call, at which time the responsibility of Carnival shall cease and this contract shall be deemed to have been fully performed, or if the Guest has not embarked, Carnival may cancel the proposed voyage without liability to refund passage money or fares paid in advance.

(f) Carnival and the Master shall have liberty to comply with any orders, recommendations or directions whatsoever given by the Government or Department of any nation or by any person acting or purporting to act with the authority of such Government or Department or by any Committee or person having under the terms of the War Risks Insurance on the Vessel the right to give such orders, recommendations or directions, and if by reason of, and in compliance with any such orders, recommendations or directions anything is done or is not done the same shall not be deemed a deviation or a breach of this contract. Disembarkation of any Guest or discharge

of baggage in accordance with such orders, recommendations or directions shall constitute due and proper fulfillment of the obligation of Carnival under this Contract.

(g) Specific stateroom assignments are not guaranteed. Carnival reserves the right to move Guests to a comparable stateroom for any reason, including but not limited to, instances in which a stateroom is booked with fewer than the maximum number of Guests the stateroom can accommodate; or when a partial Guest cancellation occurs and the remaining number of Guests do not match the maximum number of Guests the stateroom can accommodate.

## 8. COMPLIANCE WITH RULES, SOLICITATION, SMOKING, DRINKING, ILLEGAL ACTIVITY, SEARCHES

(a) Guest agrees during the course of the voyage to follow the directions of the ship's Master, or his authorized officer. Guest further agrees not to solicit anyone on the vessel for any commercial or professional purposes. Guest agrees that any violation of this Clause may subject guest to disembarkation.

(b) Guest acknowledges that Carnival's vessels contain non-smoking sections. Guest agrees to refrain from smoking in those sections and agrees that Carnival has the right to disembark the Guest for failure to observe Carnival's non-smoking policy.

(c) Any and all forms of smoking, including but not limited to, cigarettes, cigars, electronic cigarettes, and personal vaporizers, are strictly prohibited onboard except in designated exterior open deck areas, certain night clubs, and designated areas in the casino. All staterooms and suite accommodations are entirely smoke free, including the outside balcony (Effective October 9, 2014). Guest agrees to strictly comply with Carnival's non-smoking policy. Guest further acknowledges and agrees that any violation of this policy shall, in the sole discretion of Carnival, constitute a material breach of this cruise contract. In the event of such breach, Guest forfeits all rights hereunder, including the right to remain on board. Carnival reserves the right to disembark the Guest(s), at any port, as determined by Carnival. Carnival shall not be liable for any refund or other compensation or damages whatsoever to any Guest disembarked pursuant to this provision, or who disembarks because another Guest is so disembarked, and all such Guests forfeit all rights under Carnival's "Vacation Guarantee." Guest and Carnival further agree that any violation of the non-smoking policy would also cause Carnival to incur damages, including but not limited to, loss of guest goodwill, revenue, cleaning, maintenance and/or other costs. Guest and Carnival expressly acknowledge the difficulty of ascertaining the amount of such damages, and therefore agree that a reasonable estimate of the damages for any violation of the non-smoking policy is $250 USD. Guest authorizes a charge in this amount as liquidated damages, as well as repatriation expenses (including airfare) against Guest's on board charge account, without further notice, for any violation of the non-smoking policy.

(d) Guest agrees, in all ports of call, to return to the Vessel not less than 30 minutes before the scheduled departure time. Guest further acknowledges that shipboard and shore side clocks may have different times, but it is Guest's responsibility to return to the vessel so as not to miss vessel's departure. Any costs associated with transporting Guest to rejoin the vessel including, but not limited to, governmental fees, visa fees, subsistence, lodging, air fare, launch fare, car hire or agency fees shall be for the account of Guest.

(e) Carnival has a "zero tolerance" policy toward any illegal activity or behavior by Guests or crew aboard. Guest agrees to comply with this policy and further acknowledges that it is Carnival's policy to report incidents of illegal activity or behavior to the appropriate law enforcement authorities.

(f) Except as noted below, Guests are prohibited from bringing alcohol on Carnival's vessels for on board consumption. However, at the beginning of the cruise during embarkation day only, guests 21 years and older may bring one bottle of wine or champagne per person on board only in their carry-on luggage. A $15 USD corkage fee per 750ml bottle will be charged should guests wish to consume this wine/champagne in the dining room or in the Steakhouse. All alcohol, additional quantities of wine/champagne and excessive non-alcoholic beverages will be confiscated and discarded without compensation. Alcoholic beverages purchased in the vessel's gift shops or at a port of call will be retained by Carnival until the end of the voyage. Carnival reserves the right to refuse to serve alcohol to any passenger. Guest acknowledges that the minimum age permitted for the purchase, possession or consumption of alcoholic beverages aboard Carnival's vessels is twenty-one (21). Guest agrees to supervise all persons under age twenty-one (21) under Guest's charge to insure that they do not violate this, or any other, shipboard regulation. Guests who attempt to purchase alcohol by using false identification or the Sail & Sign card of a Guest who is twenty-one or older will be deemed in violation of this policy. Any Guest twenty-one or older who attempts to or purchases alcohol for any guest under twenty-one will also be deemed in violation of this policy. Guest agrees that Carnival has the right to disembark any guest who violates this policy and as well as any adults traveling with minors who violate this policy or any other shipboard regulation.

## 9. PERSONAL DATA; VIDEO SURVEILLANCE; RIGHT TO SEARCH OR INSPECT; PRIVACY NOTICE AND PUBLIC WIRELESS SERVICES

(a) Carnival may utilize closed circuit television or other surveillance means onboard the vessel.

(b) All Guests agree Carnival has, at all times with or without notice, the right to enter and search Guest's stateroom, personal safe or storage spaces, or to search or screen any Guest, and/or personal effects, at any location, to ensure compliance with any of the restrictions set forth in this agreement. Any Guest who refuses any such search or screening may be denied boarding or disembarked and no refund of the cruise fare will be issued.

(c) Guests may provide personal data to Carnival that may include names, postal or email addresses, date of birth, passport information, financial account, telephone numbers, likenesses, photographs or other information which would identify Guests personally. Guests may also provide Carnival or others certain sensitive data such as health, medical, dietary, religious, gender or sexual orientation information. All Guests agree that Carnival may (1) keep their personal and sensitive data, (2) use it in its business worldwide in accordance with its published privacy policies, (3) share it with its affiliated or related companies and (4) subject it to processing worldwide provided Carnival's safeguards are used. All Guests agree that any personal or sensitive data provided to Carnival in the European Economic Area may be used, processed and transferred worldwide including to the U.S.

(d) All Guests agree that Carnival may disclose personal or sensitive data to unaffiliated third parties (1) with the Guest's consent or authorization, (2) to help complete a transaction for the Guest, (3) to comply with law, applicable regulations, governmental and quasi-governmental requests, orders or legal process, (4) to enforce this or other agreements or protect the rights, safety or property of Carnival or others, (5) as part of a purchase, sale, or transfer of assets or our business, (6) to Carnival's agents or service providers to perform functions on its behalf, or (7) as otherwise described in Carnival's published privacy policies, as amended from time to time.

(e) Carnival may, but will not be required to, make wireless access to the Internet or access to wireless telephone services ("Wireless Services") available to Guests on board either directly or through a third party service provider. All Guests agree that use of Wireless Services is at their own risk and that Carnival shall not be liable to Guests in any manner for claims, losses or damages resulting therefrom. Guests' use of Wireless Services onboard is public; privacy of any

information sent or received is not guaranteed. Personal data may be available to third-party service providers and Carnival is not liable under any circumstances for any lack of privacy while using Wireless Services. All Guests agree that Carnival has the right, but not the obligation to monitor, record, intercept and disclose any transmissions over or using Wireless Services aboard the vessel, and to provide billing, account, or use records, and related information relating to all Wireless Services as it deems appropriate in its sole discretion (for example, in response to lawful process, orders, subpoenas, or warrants, or to protect Carnival's rights, passengers or property). All Guests agree that their use of Wireless Services is governed by Carnival's Terms and Conditions of Wireless Services [contained in your Folio or available on connection to the internet in addition to] any terms and conditions imposed by a third-party Wireless Services provider.

## 10. GUEST'S REIMBURSEMENT FOR FINES, EXPENSES, DEBTS AND DAMAGES

(a) The Guest shall be liable to and shall reimburse Carnival or the Master for any fines or penalties imposed on Carnival by any government, governmental agency or official, port or port official, for Guest's failure to observe or comply with local requirements in respect of immigration, border patrol, customs and excise, agriculture, health or any other government regulation whatsoever.

(b) The Guest or Guest's estate shall be liable to and shall reimburse Carnival for all deviation expenses (including loss of revenue), damages to the Vessel, its furnishings, operations or equipment, or any property of Carnival caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or any minors traveling with Guest. The Guest or Guest's estate shall defend and indemnify Carnival and the Vessel, their servants and agents against liability which Carnival or the Vessel or such servants or agents may incur towards any person, company or Government for any damage to property, personal injury or death caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or minors traveling with Guest.

(c) Carnival and the Vessel shall have a lien upon all baggage, money and other property whatsoever accompanying the Guest and the right to sell the same by public auction or otherwise for all sums whatsoever due from the Guest under this Contract and for the costs and expenses of enforcing such lien and such sale.

## 11. INDEPENDENT CONTRACTORS, SHORE EXCURSIONS AND OTHER SERVICES

(a) Guest acknowledges that all Shore excursions/tours (whether conducted in the water, on land or by air), airline flights and ground transportation, as well as the ship's physician, and on board concessions (including but not limited to, the gift shops, spa, beauty salon, fitness center, golf and art programs, video/snorkel concession) are either operated by or are independent contractors. Even though Carnival shall be entitled to collect a fee and earn a profit from the ticketing or sale of such services by such persons or entities, Carnival neither supervises nor controls their actions, nor makes any representation either express or implied as to their suitability. Carnival, in arranging for the services called for by the physician or nurse, all on board concessions, all shore excursion/tour tickets, all pre and post cruise airline flights or other transportation off of the ship and its tenders, does so only as a convenience for the Guest and Guests are free to use or not use these services. Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be liable for any negligent or intentional acts or omissions, loss, damage, injury or delay to Guest and/or Guest's baggage, property or effects in connection with said services. Guests use the services of all independent contractors at the Guest's sole risk. Independent contractors are entitled to make a proper charge for any service performed with respect to a Guest.

(b) Guest acknowledges that the ship's masseuse, barber, hair dresser, manicurist, fitness or golf instructor, videographer, art auctioneer, gift shop personnel, wedding planners or other providers of personal services are employees of independent contractors and Carnival is not responsible for their actions. Guest further acknowledges that although independent contractors or their employees may use signage or clothing which contains the name "Carnival" or other related trade names or logos, the independent contractor status remains unchanged. Independent contractors, their employees and assistants are not agents, servants or employees of Carnival and have no authority to act on behalf of Carnival.

## 12. LIMITATIONS OF CARNIVAL'S LIABILITY

(a) In consideration for the fare paid, it is agreed that Carnival shall not be held vicariously liable for the intentional or negligent acts of any persons not employed by Carnival nor for any intentional or negligent acts of Carnival's employees committed while off duty or outside the course and scope of their employment.

(b) In consideration for the fare paid, it is agreed that Carnival shall have no liability as a consequence of guest's use of ship's athletic or recreational equipment or as a consequence of guest's decision to participate in any athletic or recreational activity or event.

(c) On international cruises which neither embark, disembark nor call at any U.S. port and where the Guest commences the cruise by embarkation or disembarks at the end of the Cruise in a port of a European Member State, Carnival shall be entitled to any and all liability limitations and immunities for loss of or damage to luggage, death and/or personal injury as provided under EU Regulation 392/2009 on the liability of carriers to passengers in the event of accidents. Unless the loss or damage was caused by a shipping incident, which is defined as a shipwreck, capsizing, collision or stranding of the ship, explosion or fire in the ship, or defect in the ship (as defined by the Regulation), Carnival's liability is limited to no more than 400,000 Special Drawing Rights ("SDR") (approximately U.S. $608,000, which fluctuates depending on the daily exchange rate as published in the *Wall Street Journal*) if the passenger proves that the incident was a result of Carnival's fault or neglect. If the loss or damage was caused by a shipping incident, Carnival's liability is limited to no more than 250,000 SDRs (approximately U.S. $380,000, which fluctuates depending on the daily exchange rate as published in the *Wall Street Journal*). Compensation for loss caused by a shipping incident can increase to a maximum of 400,000 SDRs unless Carnival proves that the shipping incident occurred without Carnival's fault or neglect. Shipping incidents do not include acts of war, hostilities, civil war, insurrection, natural disasters, or intentional acts or omissions of third parties. In cases where the loss or damage was caused in connection with war or terrorism, Carnival's liability for any personal injury or death (whether occurring during a shipping incident or a non-shipping incident) is limited to the lower of 250,000 SDRs per passenger or 340 million SDRs per ship per incident. Punitive damages are not recoverable for cruises covered by EU Regulation 392/2009. For a copy of EU Regulation 392/2009, visit http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2009:131:0024:0046:EN:PDF. In addition, Guests embarking a cruise in a European Member State port are afforded rights under EU Regulation 1177/2010. For additional information on EU Regulation 392/2009 and EU Regulation 1177/2010, visit Carnival's website at: http://www.carnival.com/~/media/CCLUS/Images/pdf/eu-reg-no11772010-pdf.ashx

http://www.carnival.com/~/media/CCLUS/Images/pdf/eu-reg-no3922009-pdf.ashx

(d) Carnival shall not be liable to the passenger for damages for emotional distress, mental suffering/anguish or psychological injury of any kind under any circumstances, except when such damages were caused by the negligence of Carnival and resulted from the same passenger sustaining actual physical injury, or having been at risk of actual physical injury, or when such damages are held to be intentionally inflicted by Carnival.

(e) In addition to all the restrictions and exemptions from liability provided in this Contract, including under clause 12(c) for cruises that embark or disembark in a port of a European Member State, on all cruises Carnival shall also have the benefit of all statutes of the United States of America providing for limitation and exoneration from liability and the procedures provide thereby, including but not limited Title 46 of the United States Code sections 30501 through 30509, and 30511. Nothing in this Contract is intended to nor shall it operate to limit or deprive Carnival or any such statutory limitation of or exoneration from liability under any applicable laws.

## 13. JURISDICTION, VENUE, ARBITRATION, TIME LIMITS FOR CLAIMS AND GOVERNING LAW

(a) Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

(b) Carnival shall not be liable for any claims whatsoever, other than for personal injury, illness or death of the Guest, unless full particulars in writing are given to Carnival within 30 days after the Guest is landed from the Vessel or in the case the Voyage is abandoned, within 30 days thereafter. Legal proceedings to recover on any claim whatsoever other than for personal injury, illness or death shall not be maintainable unless commenced within six months after the date Guest is landed from the Vessel or in the case the Voyage is abandoned, within six months thereafter, and unless served upon Carnival within 120 days after commencement. Guest expressly waives all other potentially applicable state or federal limitation periods for claims which include, but are not limited to, allegations concerning any and all civil rights, the ADA, trade practices and/or advertising

(c) Except as provided in Clause 13 (d) below, it is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

(d) Any and all disputes, claims, or controversies whatsoever, other than for personal injury, illness or death of a Guest, whether brought in personam or in rem or based on contract, tort, statutory, constitutional or other legal rights, including but not limited to alleged violation of civil rights, discrimination, consumer or privacy laws, or for any losses, damages or expenses, relating to or in any way arising out of or connected with this Contract or Guest's cruise, no matter how described, pleaded or styled, between the Guest and Carnival, with the sole exception of claims brought and litigated in small claims court, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S. 3, 1970 U.S.T. LEXIS 115, 9 U.S.C. §§ 202-208 ("the Convention") and the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., ("FAA") solely in Miami-Dade County, Florida, U.S.A. to the exclusion of any other forum. Guest hereby consents to jurisdiction and waives any venue or other objection that may be available to any such arbitration proceeding in Miami-Dade, Florida. The arbitration shall be administered by National Arbitration and Mediation ("NAM") under its Comprehensive Dispute Resolution Rules and Procedures and the fee schedule in effect at the

time of initiating the proceeding with NAM, which are deemed to be incorporated herein by reference. If you have a question about the arbitration process or to obtain a current copy of the Comprehensive Dispute Resolution Rules and Procedures and/or fee schedule, you can contact them at: National Arbitration and Mediation, attention Claims Department, 990 Stewart Street, First Floor, Garden City, NY 11530, telephone number (800) 358-2550.

NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES AND HEREIN, OR OTHERWISE TO LITIGATE THE CLAIM IN ANY COURT (OTHER THAN SMALL CLAIMS COURT). THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT GUEST OR CARNIVAL WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION. An award rendered by an arbitrator may be entered in any court having jurisdiction under the Convention or FAA. Carnival and Guest further agree to permit the taking of a deposition under oath of the Guest asserting the claim, or for whose benefit the claim is asserted, in any such arbitration. In the event this provision is deemed unenforceable by an arbitrator or court of competent jurisdiction for any reason, then and only then the provisions of Clause 13 (c) above governing venue and jurisdiction shall exclusively apply to any lawsuit involving claims described in this Clause.

(e) Except as expressly provided in Clause 12 (c), any and all disputes whatsoever arising out of or relating to this Contract or Guest's Cruise as well as the interpretation, applicability and enforcement of this Contract shall be governed exclusively by the general federal maritime law of the United States, without regard to choice of law rules, which replaces, supersedes and preempts any provision of law of any other state or nation.

## 14. CLASS ACTION WAIVER

THIS CONTRACT PROVIDES FOR THE EXCLUSIVE RESOLUTION OF DISPUTES THROUGH INDIVIDUAL LEGAL ACTION ON GUEST'S OWN BEHALF INSTEAD OF THROUGH ANY CLASS ACTION. EVEN IF THE APPLICABLE LAW PROVIDES OTHERWISE, GUEST AGREES THAT ANY ARBITRATION OR LAWSUIT AGAINST CARRIER WHATSOEVER SHALL BE LITIGATED BY GUEST INDIVIDUALLY AND NOT AS A MEMBER OF ANY CLASS OR AS PART OF A CLASS ACTION, AND GUEST EXPRESSLY AGREES TO WAIVE ANY LAW ENTITLING GUEST TO PARTICIPATE IN A CLASS ACTION. IF GUEST'S CLAIM IS SUBJECT TO ARBITRATION UNDER CLAUSE 13 (d) ABOVE, THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ARBITRATE CLAIMS ON A CLASS ACTION BASIS. GUEST AGREES THAT THIS SECTION SHALL NOT BE SEVERABLE UNDER ANY CIRCUMSTANCES FROM THE ARBITRATION CLAUSE SET FORTH IN SECTION 13 (d) ABOVE, AND IF FOR ANY REASON THIS CLASS ACTION WAIVER IS UNENFORCEABLE AS TO ANY PARTICULAR CLAIM, THEN AND ONLY THEN SUCH CLAIM SHALL NOT BE SUBJECT TO ARBITRATION.

## 15. CARNIVAL'S USE OF GUEST'S LIKENESS

Each Guest grants Carnival and/or its promotional partners the exclusive right to include photographic, video and other visual portrayals of Guest in any medium of any nature whatsoever for any purpose including without limitation trade, advertising, sales, publicity or otherwise, without compensation to Guest, and all rights, title and interest therein (including all worldwide copyrights therein) shall be Carnival's sole property, free from any claims by Guest or any person deriving any rights or interest from Guest. Each Guest understands and agrees that professional

onboard photographers may photograph Guest, and that those photos may be processed, displayed and sold to Guests and others.

## 16. GUEST'S USE OF PHOTOS, VIDEOS OR RECORDINGS PROHIBITED

Guest hereby expressly agrees that he/she will not utilize any tape recording, video, or photograph(s) of himself/herself, any other guest, crew, or third party on board the vessel, or depicting the vessel, its design, equipment, or any part thereof whatsoever, for any commercial purpose or in any media broadcast, or for any other non private use, without the express written consent of Carnival. Guest acknowledges that by boarding the vessel, at any time, Guest irrevocably agrees to this provision, which is a condition precedent to being permitted on board the vessel and can be enforced by any legal means, including, but not limited to, injunctive relief.

## 17. GUEST'S OBLIGATIONS FOR EXPENSES OR IF CONFINED, DENIED BOARDING OR DISEMBARKED

(a) Guest agrees if Carnival incurs any expense or sustains any damage as delineated in but not limited to Clauses 2, 4, 8, 10 and this Clause, that Carnival may charge Guest's on-board charge account for any expense incurred or damage sustained.

(b) If guest is denied boarding, confined to a stateroom or disembarked from the vessel pursuant to any provision of this contract, including but not limited to Clauses 2, 4. 5, or 8, guest agrees:

i. Carnival will not be liable for any refund of Cruise Fare, other compensation or any damages.

ii. All rights under Carnival's Vacation Guarantee are forfeited. This forfeiture also applies to any guest who disembarks because another guest is disembarked.

iii. Disembarkation and repatriation to the embarkation port or any other destination will be at guest's sole expense.

iv. To indemnify Carnival and that Carnival may charge Guest's on-board charge account for any and all expenses incurred by Carnival in relation to Guest's disembarkation and/or repatriation.

## IMPORTANT TERMS AND CONDITIONS FOR NON CRUISE PORTIONS OF VACATION PACKAGES PLEASE READ CAREFULLY

1. Please see above for the applicable terms and conditions for the cruise portion of Guests vacations. The terms and conditions in this paragraph apply only to Carnival's responsibilities for non cruise portions of vacation packages. Other terms and conditions with respect to air travel, hotel and other non cruise activities may be applied by the entities providing those services.

2. The payment of the required deposit or any partial or full payment for reservation of a land package before or after the cruise shall constitute acceptance and consent to all of the terms and conditions of this Contract and the General Information and Vacation Package Conditions and Restrictions contained in the brochure for such vacation package and/or the brochures and circulars of the suppliers. These provisions are herby incorporated by reference in this Contract and vacation package Guests (hereinafter referred to as Guests) are advised to take note of them.

3. For purposes of this paragraph "CARNIVAL" refers to Carnival Cruise Lines, its affiliates, subsidiary companies, agents, servants, and employees. CARNIVAL is the principle tour operator and its responsibility to Guests is limited to the arrangement of all tours and accommodations offered in these vacation packages. CARNIVAL shall not be responsible for personal injuries, death, or property damage, economic loss, inconvenience or delay,

consequential damages, or change of itinerary or accommodations incurred by any person or Guest which may occur due to acts or omissions or tortious conduct on the part of any direct or supplemental air carrier, hotel or other suppliers of arrangements and services or other independent contractors, their employees, agents or others not under the direct control of CARNIVAL.

4. CARNIVAL reserves the right to decline to accept or to reject any person as a Guest, at any time, or to cancel a vacation package due to circumstances beyond the control of CARNIVAL.

5. CARNIVAL reserves the right to substitute hotels for other hotels in a similar category, to substitute air carriers, and to change schedules without prior notice should circumstances so require.

6. If a change in the itinerary is needed due to factors or conditions beyond CARNIVAL'S control, no refund or credit will be made, however, CARNIVAL will make an effort to provide accommodations and services of a comparable quality and standard as set forth in the brochure. Any such change shall not modify the cancellation provisions in the brochure. No credit will be allowed nor refund given for any services provided in the brochure should any such services not be utilized by Participants.

7. CARNIVAL makes no representations or warranties, implied or otherwise, in regard to the reliability of suppliers or independent contractors, nor does it assume a duty of safety or responsibility for the independent acts of suppliers, independent contractors, their employees or agents.

8. Vacation packages are non-transferable. Fares shall be deemed to be earned when paid and non-refundable unless otherwise expressly stated in the cancellation provisions in the brochure.

9. CARNIVAL shall not be liable for any claims whatsoever other than for personal injury, illness or death, of the Guest unless full particulars thereof in writing are given to CARNIVAL within 30 days after the Guest shall complete the packages, or in the case that the tour is abandoned, within 30 days thereafter. Suit to recover any claim shall not be maintainable in any event unless commenced within six months after the date of the loss.

10. CARNIVAL shall not be liable for any claims whatsoever for personal injury, or illness or death of the guest unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing.

11. It is agreed by Guest and CARNIVAL that all disputes between Guest and CARNIVAL arising under or in connection with a vacation package shall be litigated, if at all, in and before the United States District Court for the Southern District of Florida in Miami-Dade County, Florida, U.S.A., to the exclusion of the courts of any other state or county.

## IMPORTANT ADDITIONAL TERMS AND CONDITIONS FOR FLY AWEIGH AIR FARE SUPPLEMENTS

1. **Arrangements by CARNIVAL:** If you are participating in our Fly Aweigh® program or Fly Aweigh® and Tour package, Carnival will arrange for air transportation from the select home cities offered to an airport near the departure point of your Cruise or Cruise tour and return air transportation from an airport near the termination point of your Cruise or Cruise tour to the home city from which you departed. Please refer to Carnival's web page for additional information on our Fly Aweigh® program and destinations. Carnival reserves the right to add or

withdraw a Fly Aweigh® city at any time, but will attempt to accommodate those Guests under deposit or final payment. Fly Aweigh® bookings are not guaranteed and are subject to air carrier's availability and restrictions. Due to the special fares and capacity limitations imposed by the airlines, Carnival retains the right to select carriers and determine routings. Some routings may involve travel to an airport other than in the city where the ship embarks or disembarks; in those cases, subject to availability, Carnival will offer motor coach transportation to and/or from the ship as an optional service at an additional cost. Flight schedules and/or availability may require overnight hotel accommodations either to join and/or to return from your cruise or cruise tour; only in those instances, where an overnight stay is required, Carnival will cover the cost for the hotel, taxes, porterage and transportation between the hotel and the airport/pier; any additional expenses will be the responsibility of the Guest. Please refer to Carnival's web site for full and up to date Carnival's policies on booking hotels and responsibility for the costs of hotels and associated services.

**2. Schedule Changes/Air Delays:** Carnival strives to accommodate each guest on flights that will ensure timely arrival and boarding of your ship. In the event that the guest is precluded from a timely arrival to the port of embarkation, as a result of weather conditions or other flight delays, Carnival, at its own expense, will make the flight, transportation, and lodging arrangements necessary to coordinate for the guest's successful boarding at ship's next port of call. Carnival reserves the right to change or alter, without notice, flight arrangements in order to meet our ship departure and/or arrival times. If tickets have already been issued, Carnival will adjust your itinerary or air carrier accordingly. If a paper ticket has been issued, Carnival may ask you to return your tickets to your travel agent or Carnival. If you choose to cancel your flight arrangements or alter your airline schedule in any way once your tickets have been issued (except when an itinerary or carrier adjustment has occurred), you will be responsible for any additional cost or fees resulting from the cancellation or change, which can total up to the full cost of the ticket. If you request Carnival's assistance with a change in airline arrangements, within 60 days of departure, a service fee of $150 USD, or its equivalent in foreign currency, will be levied in addition to any charges imposed by the airlines. If your flights are delayed, refer www.carnival.com/flyaweigh.

**3. Refunds/Seat Assignments/Special Services/Fares/Lost Tickets/Baggage Charges:** Tickets are issued at the lowest applicable economy fare available and all fare restrictions apply. Failure to use your tickets results in a waiver of its value and any compensation; unused airline tickets are only refundable to Carnival. Please note that because of changing airline tariffs, your actual air ticket may reflect fares higher or lower than the air add-on or cruise only credit amounts originally quoted. If so, the difference is neither chargeable nor refundable to you; you will be charged the amount originally quoted. Carnival reserves the right to pass on to the Guest any cancellation or change penalties, which may total up to the amount originally quoted. It is your sole responsibility to re-confirm flight arrangements, within 48 hours of flight departure, to request seat assignments, special meals and/or other special services directly with the airline. Carnival is not responsible for airline schedule changes. Guests are responsible for luggage fees, excess luggage charges as well as any other charges imposed by airlines or airports. For additional information on airline's baggage charges and fees please refer www.carnival.com/airlinebaggagefees or reference against the flight information page in your cruise document accessed through Manage My Cruise. You are responsible for the cost of replacing lost paper tickets. If a paper ticket is issued instead of an E-ticket, the original paper ticket must be returned to Carnival; any outstanding refund will be held pending the receipt of the paper tickets. A lost ticket application fee of $200 USD, or its equivalent in foreign currency, per ticket may be assessed if a paper ticket is not returned.

**4. Liability and Relationship with Airlines:** If Carnival is unable to arrange for air transportation for any cause beyond Carnival's control, such as airline capacity controls, air

transportation arranged is no longer available, or otherwise fails to materialize, Carnival's sole liability will be limited to refunding the air add-on paid or cruise only credit. Carnival acts as an independent travel agent, and it is not affiliated with the airline carriers. Carnival books air as a convenience for the Guests. Carnival assumes no liability for any of the airlines' acts or omissions, including, without limitation, those involving cancellation of flights, schedule changes, re-routings, damage to or delay or loss of baggage, flight delays, equipment failures, accidents, pilot or other staff shortages, overbooking or clerical/system errors. Your rights against the airlines are controlled and subject to the terms and conditions set forth in the airline's ticket and tariffs, and any and all applicable laws and regulations.

- **Special Offers**

- Cruise Deals
- Early Saver Specials
- VIFP Club Offers
- Gift Cards

- **Book A Cruise**

- Find a Port
- Find a Cruise
- Find a Travel Professional
- Great Vacation Guarantee
- Lowest Price Guarantee
- Vacation Protection
- Cruise-A-Nalities

- **Group Travel**

- Contact a Group Planner
- Group Shore Excursions
- Charters, Meetings & Incentives
- Themed Cruises
- Weddings & Occasions

- **Already Booked**

- Manage My Cruises
- Before You Cruise FAQs
- Airport Transfers
- In-Room Gifts & Shopping
- Shore Excursions
- Carnival LIVE Tickets
- Hotel Packages
- Organizer Access

- **Customer Service**

- Carnival FAQs
- Contact Us
- Travel Documentation
- Cruise Reviews

- Support Forums
- Embarkation Information
- Guests with Disabilities
- Cruise Ticket Contract
- Passenger Bill Of Rights

  - **About Carnival**

- Press / Media
- St Jude
- Carnival Foundation
- Safety and Security
- Sustainability
- Business Ethics
- Investor Relations
- World's Leading Cruise Lines

- About Carnival
- Legal Notices
- Privacy Policy
- Careers
-